Referred to MJ R B Collings

**Complaint:**    Discriminatory Dismissal (ADA/Title III/504/Civil Rights) (Disability Law)
(Education Rights/Policy)

**Facts:**    Learning Disability
I have been diagnosed with a learning disability, a visual learning disorder and
ADD. Documents were given to Southern New England School of Law officials
prior to final exams with a notice stating that "a complete evaluation and report
have not been completed." (Ref.: 05/07/03)

Negligence: Intentional Infliction of Emotional Distress
I was a victim via "intentional infliction of emotional distress" by Irene M. Scharf,
an assigned Law Advisor and Torts Instructor due to her accusation of stalking.
While SNESL has denied that this ever happening, this accusation worsen my
learning disability because it caused severe emotional distress long before final
exams. (Ref.: 02/04/03)

**Analysis:**    Learning Disability
On June 29, 2002 Dean Ward was given notice of a potential learning disability in
my initial statement to him before actual admissions into SNESL. I affirmed that
my low-test scores on ACT, GRE and LSAT (taken twice) were not effective
measurements of my potential as an attorney. (Ref.: 06/29/02)

After mid-term exams in 2002, Dean Ward, Dean Hillinger and Irene M. Scharf
suggested that I receive special testing accommodations because I was having
difficulty reading sequenced multiple-choice questions during exams. Dean Ward
acknowledged this fact, and suggested that I meet with Dr. Christine Frizzell at
UMass, Dartmouth. Dr. Dorothy B. Brown gave me an evaluation, and I was
dismissed from SNESL before her evaluation was complete. (Ref.: 05/07/03)

Negligence: Intentional Infliction of Emotional Distress
On February 3, 2003, I met with Dr. Christine Frizzell, regarding test-taking
methods, and was allowed to transfer from Irene M. Scharf's class due to the
above mentioned accusation. Her remark was intentional because the Dean's
approval for a transfer without her permission from Henry Arruda's Writing Class
substantiated her accusation. This accusation worsened my learning disability
because it caused severe emotional distress, loss of concentration, anxieties,
focus and memory months prior to exams. (Ref.: 11/16/02; 02/03/03; 02/04/03)

**Conclusion:**    In sum, I explained to the Academic Standards Committee – Dean Hillinger and
Professor Cleary – that my academic achievement record and circumstances of
my case (e.g. low scores in two classes were due to my visual learning disability
and a false accusation made against me) did not adequately reflect my potential
as an attorney. Moreover, I explained that any African American older woman or
a reasonable and prudent person under the same set of circumstances more
than likely would not do well in any law program. (Ref.: 05/16/03; 06/09/03)

On June 26, 2003, after two written appeals to the Deans and full Faculty, I was
dismissed based on my academic record and circumstances of my case. (Ref.:
06/26/03)

Thus, I seek your Legal Advocacy and Protection for the following: 1) Review and
Correction of Student File, 2) A Written Statement of Apology by Ward, Hillinger
and Scharf for Defamation, 3) Out-of-Pocket Damages for Negligence and Loss
of potential Compensation, and 4) Court and Legal Costs.

DISCRIMINATORY DISMISSAL FROM SOUTHERN NEW ENGLAND SCHOOL OF LAW
FALL SEMESTER 2002 – SUMMER SEMESTER 2003
OUTLINE

1. <u>Learning Disability (Timeline of Documentation)</u>
   According to the Office of Civil Rights, United States Department of Education, ADA
   and 504 Rules and Regulations, most postsecondary schools must have a person called
   the Section 504 Coordinator, ADA Coordinator, or Disability Services Coordinator.

   - Southern New England School of Law violated this rule because they do not
     have a person identified to serve in this capacity, during the 2002-2003 my
     academic school year.

2. <u>Learning Disability (Academic Adjustments, if not working appropriately)</u>
   According to the OCR, US Department of Education, if the academic adjustment is not
   working, the school should work with the student to identify an appropriate academic
   adjustment.

   - SNESL violated this rule with extreme prejudice because they dismissed me
     without neither waiting for my evaluation to be completed, nor conducting their
     own assessment, or offering an academic probation to re-take two courses.

3. <u>Learning Disability (Required Academic Adjustments by the School)</u>
   According to the OCR, Rules and Regulations, colleges and universities are required to
   provide students with appropriate adjustments (e.g. taped texts, notetakers, interpreters,
   readers, and specialized computer equipment).

   - SNESL violated this rule because they failed to wait and review my completed
     evaluation that instructed a "reader" for exams.

4. <u>Negligence: Intentional Infliction of Emotional Distress (By SNESL faculty, Irene
   Scharf)</u>
   According to the OCR laws, both Section 504 and Title II (ADA) make unlawful for
   people to harass those because of their disability.

   - SNESL violated this rule because an assigned law advisor and Torts Instructor,
     Irene Scharf accused me of stalking her as a retaliatory act against me because I
     asserted myself with a learning disability concern, and requested to the Associate
     Dean a Legal Writing class transfer without her approval.

     o SNESL Instructor, Irene Scharf's unapproved transfer substantiated her
       accusation because she told me not to attend the new class and that the
       transfer was illegal without her approval.

     o SNESL later denied that Scharf's accusation ever happened, informed
       me not so say anything about the matter, and transferred me from
       Scharf's Torts class because of my request to prevent further harassment
       (e.g. verbal assault and defamation) by Irene Scharf.



**The Gillard Institute, Inc.**
4120 South King Drive
Lower Level-Basement
Chicago, IL 60653

773-624-5138
LsGillard@aol.com

June 29, 2002

Robert V. Ward, Jr.
Dean
Southern New England School of Law
333 Faunce Corner Rd.
North Dartmouth, MA 02727-1252

Dear Dean Ward:

I am writing to seek entrance as a Jurisprudence Doctoral candidate for the fall semester at Southern New England School of Law.

Certainly, my greatest challenge for legal study is to become a student, first. Unfortunately, standardized tests scores throughout my entire academic career (e.g. ACT, GRE and LSAT- twice, including a prep class) are not adequate measurements of my overall achievements as an educator, thinker and more importantly writer.

Legal studies are imperative procedures that govern all societies, tribes and unions. It appears that your program offers a steadfast approach that deems necessary for my legal study pursuits. Hence, I am seeking your full consideration and support of my candidacy.

Enclosed are materials outside of the LSAC for your review. Concerns or questions, please do not hesitate to contact me.

I look forward to your response.

Sincerely,

Lisa Gillard
Founder



*"Building bridges . . .
Connecting lives . . ."*

MEMORANDUM

**TO:**     Professor Hillinger
           Associate Dean, SNESL

**FROM:**   Lisa Gillard

**DATE:**   November 16, 2002

**RE:**     Legal Writing and Research
           Section Transfer

**CC:**     Arruda, Folino, Scharf, Ward
           Student FILE

---

This document is an official request to transfer Legal Writing and Research Sections, from Arruda to Folino, in the Spring Semester 2003.

Unfortunately, under Professor Arruda's instruction, I am unable to perform and adequately measure or develop my writing skills because of the following course polices:

- Writing and Revision process: There is not a clearly established pre-writing draft, and revision process in the class. If the instructor does not collect first drafts, or second drafts, and make necessary suggestions, as a policy, there is not a real measurement or guidepost for the writing process.

- Tutorial Assistance: Based on the instructor's Policies and Procedures, students are advised not to "form groups" or "receive help in revising, editing, or proofreading" process. If the instructor is not providing an established pre-writing draft, second draft, and revision process, it is nearly impossible to understand the assignments, to adopt the instructor's writing style, and to develop writing skills that is beyond satisfactory.

I, too, believe that Professor Arruda is a skillful legal practitioner, and a brilliant adjunct professor. However, my primary concern is the procedural policy that subsequently prohibits my growth as a student writer. While I am able to read and analyze cases much better, I am unable to develop my writing skills. If the instructor does not provide adequate feedback, as a policy, in pre-writing and revision stages, then grades become more or less "subjective," rather than "objective." In other words students are less inspired, and unable to develop as future legal writers and researchers.

Upon your review of this request, I hope to complete the Fall 2002 semester with Professor Arruda, and continue the writing process (e.g. complete a third memo, if necessary, and make-up other class materials) with Professor Folino in January 2003.

If there are any concerns or questions, please kindly contact me via email or cell phone at (773) 398-9026.

Again, I thank you for your attention to this matter.

**SOUTHERN**
**NEW ENGLAND**
**SCHOOL**
**of LAW**

Lisa Gillard
1261 Church St., Apt.13
New Bedford, MA 02745

January 23, 2003

Dear Ms. Gillard:

Your academic record this past semester indicates that you received either a final grade below 70 or a mid-term grade below 70 in a full-year course. Grades below 70 are considered unsatisfactory by the Faculty of Southern New England School of Law.

Because of this, the Academic Standards Committee of the Faculty has instructed me to refer you to the academic support program for assistance. As stated in § II.J.1. of the *Student Handbook*, you should not view your referral to the academic support program as a punitive measure. Instead, it is intended to help you identify and remedy any academic problems that you may be having.

Your participation in the academic support program is required. Please contact Professor Anne Folino at the Office of Academic Services (508) 998-9600 ext. 162 to set up an appointment this spring.

The Faculty believes that the academic support program can be of real assistance to those students who devote sufficient time and energy to it. I fully expect that you will do so and that your academic record will flourish accordingly.

Very truly,

Michael G. Hillinger
Associate Dean

cc: Registrar
    File

**SOUTHERN**
**NEW ENGLAND**
**SCHOOL**
*of* **LAW**

Lisa Gillard
1261 Church St., Apt.13
New Bedford, MA 02745

January 23, 2003

Dear Ms. Gillard:

Your academic record this past semester indicates that you received either a final grade below 70 or a mid-term grade below 70 in a full-year course. Grades below 70 are considered unsatisfactory by the Faculty of Southern New England School of Law.

Because of this, the Academic Standards Committee of the Faculty has instructed me to refer you to the academic support program for assistance. As stated in § II.J.1. of the *Student Handbook*, you should not view your referral to the academic support program as a punitive measure. Instead, it is intended to help you identify and remedy any academic problems that you may be having.

Your participation in the academic support program is required. Please contact Professor Anne Folino at the Office of Academic Services (508) 998-9600 ext. 162 to set up an appointment this spring.

The Faculty believes that the academic support program can be of real assistance to those students who devote sufficient time and energy to it. I fully expect that you will do so and that your academic record will flourish accordingly.

Very truly,

Michael G. Hillinger
Associate Dean

cc: Registrar
     File

**lgillard@mail.snesl.edu**

| Menu | View Mail | Compose | Search | Calendar | Log Off |
|------|-----------|---------|--------|----------|---------|

Back | Prev | Reply | Reply All | Forward | Delete

Message: 8 of 8    Printable Version

From: Donna Desirey <ddesirey@snesl.edu>   Save Address

---

Date: Tue, 04 Feb 2003 09:59:12 -0500
Reply-To: ddesirey@snesl.edu
To: <!lgillard@snesl.edu>
CC: <ischarf@juno.com>
Subject: Clarification

Hello Lisa:

Dean Ward dictated the following message to you:

"After our conversation, I spoke with Associate Dean Michael Hillinger
and Professor Irene Scharf and want you to know that Professor Scharf
never used the term 'stalking' when discussing the situation.  That was
our misunderstanding of what she was saying.  Also, the letter we
discussed yesterday has been mailed to your New Bedford address."

---

Back | Prev | Reply | Reply All | Forward | Delete

Classic WebMail v2.1.0
Send questions to our Support Team

## TIVERTON PSYCHOLOGICAL SERVICES

2128 Main Road
Tiverton, Rhode Island 02878
(401) 624-9972

DOROTHY B. BROWN, Ph.D.
ANNE M. DAVIDGE, Ph.
DENNIS J. ROG, Ed.D.
*Licensed Psychologists*

May 7, 2003

Dear Professor Clifford and/or To Whom It May Concern:

Lisa Gillard, student for Spring 2003, clearly has an Attention Deficit Disorder diagnosis and has weaknesses in the areas of visual speed, visual perceptual organization and working memory. A complete evaluation and report have not been completed, however, she clearly has special needs in the above areas according to her testing.

It is recommended that Lisa be allowed at least an extra hour on her exams and computer use.

If you have any questions, please contact me.

Sincerely,

Dorothy B. Brown PhD, NCSP
DB:ks

May 12, 2003

Lisa Gillard
1261 Church Street  Apt 13
New Bedford, MA 02745

Dear Ms. Gillard:

Under § II.J.2. of the *Student Handbook*, academic performance is considered unacceptable when a student receives a cumulative average below 70, fails a required course, receives a cumulative total of 9 credits or more of grades below 70, or fails to comply with prior probationary or supervisory conditions. Because your academic record indicates that you fall within one of these categories, the Academic Standards Committee has instructed me to inform you that your performance is unacceptable and you are subject to academic dismissal.

Although you are *subject to academic dismissal*, the dismissal is not automatic and each student's case is given individual consideration by the Academic Standards Committee of the Faculty. In order to aid the Committee in reaching its decision, you have the opportunity to submit a *written* statement to the Committee. Neither the Committee nor any of its members grant personal interviews.

The statement should contain any information bearing on your academic performance which you believe the Committee should consider in reviewing your case. This information will be kept confidential.

The statement should be addressed to my attention and may be mailed or delivered to the administrative office. However, your statement must be *received* at the school no later than **Thursday, May 22, 2003 at 12:00 p.m.**

The Committee will inform you of its decision as soon as possible. Please note that if the Committee decides to allow you to continue in the program, but requires you to re-take any course(s), you must take the course(s) at the next time offered in your division.

Very truly,

Michael G. Hillinger
Associate Dean

cc: Academic Standards Committee

## MEMORANDUM

**TO:**        Professor Cleary, Chair
Academic Standards Committee

**FROM:**     Lisa Gillard

**DATE:**      05-16-2003

**SUBJECT:**   Academic Dismissal Review

**CC:**        Committee Members, Hillinger, Rudko, Ward
Student FILE ***SEE ATTACHMENTS***

---

This document is a sincere response to a letter dated <u>Monday, May 12, 2003</u> from Associate Dean Michael Hillinger at SNESL.

In lieu of meetings with instructors, preparation and study, I, too, am a "subject to academic dismissal." While I have <u>not</u> received my full academic report via mail, the following is a response to your concerns about my first year progressions:

- **Learning Disability**: The first semester's grades were <u>not</u> due to a lack of study, but the inability to apply rules to fact patterns. There were problems with "Multiple Choice" questions and also identifying issues. I worked with a tutor for the entire year.

- **Transfer of Classes**: In mid-November, early October, I realized that I was <u>not</u> receiving the adequate feedback in my writing class, and Arruda refused to meet with me on more than one occasion to discuss my writing. I partitioned to transfer to Folino, and Dean Hillinger granted the request.

- **False Allegations of Stalking**: October 2003, Scharf encouraged weekly email and office meetings to discuss TORT problems. January 2003, after meeting with Dr. Christine Frizzell at UMASS-Dartmouth about test-taking techniques, I was informed by Frizzell that Scharf wrote a letter to Dean Ward stating that I was "stalking" her. Thus, Dean Ward granted a transfer to Professor Cleary's class.

In conclusion, a reasonable and ordinary person under similar circumstances probably would <u>not</u> be able to withstand such challenges beyond the normal course of law school transition and daily life. As a community leader, educator and writer, I believe that the learning process must be accompanied by professional guidance and support. That is why I am seeking your <u>consideration</u> to continue my academic pursuits as a future legal scholar at SNESL.

If there are any questions, please feel free to kindly contact me at <u>(773) 398-9026</u>.

Again, I thank you for your attention to this matter.

**SOUTHERN
NEW ENGLAND
SCHOOL
of LAW**

June 5, 2003

Lisa J. Gillard
1261 Church Street  Apt 13
New Bedford,  MA 02745

Dear Ms. Gillard:

I regret to inform that, after careful consideration of your case, the Academic Standards Committee of the Faculty has decided that you will not be allowed to continue in courses at Southern New England School of Law.

You have the right to appeal your academic dismissal to the full Faculty by sending a letter, stating the grounds of your appeal, to the Associate Dean by 4:00 p.m. on Wednesday, June 11, 2003. Your dismissal will become effective on that date if you do not appeal.

If you are currently enrolled in courses, you are entitled to a full refund of the tuition paid for this semester.  Please contact the Business Office at (508) 998-9600, ext. 118 or ext. 101, if you are entitled to a refund.

The Academic Standards Committee regrets that it had to take this action, but feels that it was required by your academic record and the circumstances of your case.  The law school wishes you the best of luck in your future endeavors.

Very truly,

Michael G. Hillinger
Associate Dean

cc: File
     Registrar

**MEMORANDUM**

**TO:**      Dean Michael Hillinger,
            Associate Dean of Students
            Southern New England School of Law

**FROM:**    Ms. Lisa Gillald

**DATE:**    06/09/2003

**RE:**      Statement of Appeal
            Academic Dismissal Decision

**CC:**      Faculty and Student FILE

This is my final statement of appeal to the Academic Standards Committee at
Southern New England School of Law.

Based on the Academic Dismissal Decision dated on June 5, 2003, as a first
year law student, I have been found guilty of the following charges:

1) "unacceptable" and "poor" academic performance, and
2) a criminal offense, "stalking."

In your review of these documents, I request that the Academic Standards
Committee and Faculty evaluate the extenuating circumstances in my case
without prejudice. If there is any evidence that would subsequently exonerate me
from the above charges, I seek an alternative remedy:

1) readmission to the Law School's program;
2) to continue summer courses;
3) a one-year leave of absence; and
4) retake Property I/II with Clifford, and Torts I/II with Cleary.

Again, I thank you for your attention to this matter and support.

SOUTHERN NEW ENGLAND SCHOOL OF LAW

APPEALS COURT

BRISTOL, ss.                                    2003 SITTING

06-0-8003

_____

ACADEMIC STANDARDS COMMITTEE

v.

LISA GILLARD

_____

DEFENDANT'S BRIEF

_____

ON APPEAL FROM A JUDGMENT OF
THE ACADEMIC STANDARDS COMMITTEE AT SOUTHERN NEW SCHOOL OF
LAW

_____

Respectfully submitted,
LISA GILLARD
ASPIRING ATTORNEY

Lisa Gillard
_____
I.D. #060588
First Year Law Student
SNESL
1261 Church Street, B13
New Bedford, MA 02745
(773) 398-9026

## TABLE OF CONTENTS

ISSUE PRESENTED . . . . . .  . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . 1

STATEMENT OF THE FACTS . . . . . . . . . . 2

ARGUMENT

I)    THE ACADEMIC STANDARDS COMMITTEE
      VIOLATED THE OBJECTIVES IN THE
      MISSION STATEMENT AT THE SOUTHERN
      NEW ENGLAND SCHOOL WHEN NOTIFYING
      THE DEFENDANT OF ACADEMIC DISMISSAL
      BASED ON ACADEMIC RECORD AND
      CIRCUMSTANCES OF THE CASE . . . . . . 6

CONCLUSION    . . . . . . . . . . . . . . 10

## ISSUE PRESENTED

I)    WHETHER THE ACADEMIC STANDARDS COMMITTEE
ERRED WHEN NOTIFYING THE DEFENDANT OF ACADEMIC
DISMISSAL ON THE GROUNDS OF ACADEMIC RECORD AND
CIRCUMSTANCES OF THE CASE

### STATEMENT OF THE CASE

This is an appeal from the defendant's Academic
Dismissal notice returned by the Academic Standards
Committee on June 5, 2003, charging her with an
Academic Dismissal based on the defendant's academic
record, and the circumstances of her case.

The defendant was tried before the Academic
Standards Committee, with Professor Cleary, and Dean
Hillinger presiding, beginning on May 12, 2003,
and on June 5, 2003, she was found guilty of both
charges.

A notice of appeal was filed on June 9, 2003,
and the case was to be reviewed by the Academic
Standards Committee on June 12, 2003.

## STATEMENT OF THE FACTS

## A. The defendant's testimony

Lisa moved from Chicago, Illinois nine months ago to attend Southern New England School of Law without her family. She is the great-granddaughter of a southern Baptist preacher, granddaughter of college professor, and daughter of a elementary school teacher. As an African American older woman, she applied to law school late in her career as a promise to her late grandmother, who insisted that she pursue a law degree. Lisa was attracted to the program after Dean Robert Ward, an African American, sent her a letter explaining the 1:17 percent ratio, one teacher per seventeen students in the classrooms. Although Lisa knew that she had problems with test taking skills in the past, she submitted a letter to Dean Ward seeking admissions, not based on academic performance, but on the merit of her community service and previous graduate studies. Her goal was to study law. Lisa has been an educator and Professor in English more than eight years in Chicago. Lisa has served at DePaul University, Harold Washington College, School of the Art Institute, City Colleges of Chicago, and last

-2-

at Bristol Community College. Also, Lisa has taught three years at an alternative high school, working with at risk youth and families.

As a student, she has worked with noted writers like the late Dr. Margaret Walker Alexander, Sterling Plummp, Sonia Sanchez, Mari Evans, Angela Jackson, the late poet laureate of Illinois, Gwendolyn Brooks, and Dr. Margaret Burroughs, a Chicago Park District Commissioner and Founder of DuSable Museum of Afro-American History. Lisa has worked with scholars like life-long mentor, Dr. Maryemma Graham, Dr. Ron Bailey, and former president of Spelman College in Atlanta, Dr. Johnetta Cole.  Lisa has published news articles, and poetry, and founded The Gillard Institute, Inc., a not-for-profit education corporation. Samuel Akainyah serves as the Chairman of the Board; his father was the late Chief Justice of Ghana, Africa. Justice Akainyah's creeds document International Law.

Currently, Lisa has been working with her new law advisor, Professor Frances Rudko, prior to taking her two summer classes in International Law, and Human Rights/Civil Rights Law. Professor Rudko has provided

-3-

crucial guidance and inspiration through Lisa's academic trials, and has understood the nature of Lisa's extenuating circumstances at the school, as a mother and friend. Professor Rudko has encouraged Lisa to focus on her summer classes, and to remain positive throughout the appeals process. Also, Lisa has been working with Chief Justice La Staiti of the Bristol County Family and Probate Court. Lisa met Justice La Staiti at Bethel A.M.E. Church during a Black History Month program. While Judge La Staiti has been made aware of Lisa's academic trials, La Staiti has also offered her support to serve as Lisa's mentor.

Prior to the notice of appeal, Lisa attempted to meet with Dean Hillinger. Also, Lisa has emailed, and telephoned Faculty and Staff members seeking an alternative remedy. While Lisa did meet with Dean Ward to discuss school issues on the date of the actual notice, Dean Ward did not speak to her about the Academic Dismissal decision.

## B. Academic Standards Committee instructions

Under Section II.K.18 of *Southern New England School of Law Student Handbook*, a student who is academically dismissed may appeal the dismissal to the full Faculty by submitting a written appeal setting forth the reasons why the student should not be dismissed. In that written appeal, the student may not rely on any facts or reasons that were not originally presented to the Committee. The written appeal should be addressed to the Associate Dean and must be received within seven business days of the date when the notice of dismissal is sent. The decision of the Faculty is final and unappealable.

**ARGUMENT**

**I)    THE ACADEMIC STANDARDS COMMITTEE VIOLATED THE OBJECTIVES IN THE MISSION STATEMENT AT THE SOUTHERN NEW ENGLAND SCHOOL OF LAW WHEN NOTIFYING THE DEFENDANT OF ACADEMIC DISMISSAL BASED ON ACADEMIC RECORD AND CIRCUMSTANCES OF THE CASE**

Under the Mission Statement in the *Student Handbook*, the Law School seeks to accomplish these three principles. First, the Law School's educational program includes the traditional focus on developing student's analytical skills in the law. Second, the Law School provides students with the opportunity to begin developing practical legal skills so as to have a realistic grasp of what practicing law means. Finally, the educational program at the Law School is designed to introduce students to the fundamental human questions connected with the study and practice of law so that they may more fully understand the responsibilities of being a lawyer and thus be better prepared to face the challenges involved in the practice of law in American society.

First, the Law School contends that its educational program includes the traditional focus on developing

**-6-**

student's analytical skills in the law. In the *Oxford Dictionary*, tradition means a belief or custom handed down from one generation to another. This belief or custom appears practical in law because analytical skills require an active learning process, verbal as well as written. An example of an active learning process is open communications about ideas relating to law without prejudice with teachers or other crafters in the field. With a constant interchange and exchange through an active learning mode, the analysis becomes the bridge that binds and transfers tradition.

In this case, the defendant was born into a four-generation family of southern educators and community leaders. Tradition is not only form of an analytical process, but it is a way of life. Through the southern culture of tradition, teachers are the mentors, who pave the way through education and experience. Teachers are the forefathers and foremothers of the body of knowledge. It is a teacher who plants the seeds so that children are nourished for growth and development. In this case, however, Professor Rudko has provided the inspiration of southern tradition with her teaching analysis and method. Because the

-7-

defendant has many years of education experience as a student as well as a teacher, the Academic Standards Committee has denied the defendant an opportunity to continue to grow through Law School's traditional focus.

Second, the Law School contends that it provides students with the opportunity to begin developing practical legal skills that makes practicing law more realistic. In the *Oxford Dictionary*, practice is a repeated exercise to improve skill. In order to improve in any area of learning, there must in be time for practice until the practicing becomes a natural part of the human experience. Practice is much like a form of tradition.

In this case, the defendant has neither experience, nor formal training in the field of law. While the defendant has been motivated to study, the practical opportunities are impossible without "the repeated exercise to improve skill." Since the defendant's work ethic through tradition is evident in her commitment in higher learning, the Academic Standards Committee has denied the defendant the opportunity to repeat the two core courses, Property and Torts, to improve

-8-

practicing skills.

Finally, the Law School contends that its educational program is designed to introduce students to the fundamental human questions connected with the study and practice of law in American society. In the *Oxford Dictionary*, a question is a sentence requesting information, or a matter for discussion or solution. An education program in law is no different from any other institution of higher learning. Learning engages the human experience through the form of questions. It is a matter of discussion. It is a form of solution. A question is a remedy.

In this case, however, the defendant has had many questions, inside as well as outside of the classroom, in library and with tutors, in the Courthouses and synagogues, and in person and on paper. A question examines the tradition and practice in law. In the fundamental study of a legal education in this society, a question is matter of a practical solution to issues or concerns. Even though the defendant has acknowledged problems with test taking skills in the past, the Academic Standards Committee has denied the

-9-

defendant the opportunity to question the fundamental human experience that connects the study and practice of law in the American society.

### CONCLUSION

For the reasons set forth in Argument I, the defendant should be reinstated to the School's Law program without prejudice, be allowed to continue summer courses without prejudice, be allowed a one-year leave of absence without prejudice, and be allowed to retake Property I/II, and Torts I/II without prejudice.

Respectfully submitted,
LISA GILLARD


Lisa Gillard I.D.#060588
1261 Church Street, B13
New Bedford, MA 02745
(773) 398-9026

# SOUTHERN
## NEW ENGLAND

# SCHOOL
# *of* LAW

June 26, 2003

Lisa Gillard
1261 Church Street Apt#13
New Bedford, MA 02745

Dear Ms. Gillard:

I regret to inform you that, after careful consideration of your case, the full faculty has voted to deny the appeal of your dismissal from Southern New England School of Law. This means you no longer will be allowed to continue in courses at the school.

If you are currently enrolled in courses, you are entitled to a full refund of the tuition paid for this summer semester. Please contact the Business Office at (508) 998-9600, ext. 118 or ext. 101, if you are entitled to a refund.

The faculty regrets that it had to take this action, but feels that it was required by your academic record and the circumstances of your case. The law school wishes you the best of luck in your future endeavors.

Very truly,

Michael G. Hillinger
Associate Dean

cc: Registrar
   File

## TIVERTON PSYCHOLOGICAL SERVICES

2128 Main Road
Tiverton, Rhode island 02878
(401) 624-9972

DOROTHY B. BROWN, Ph.D
ANNE M. DAVIDGE, Ph.D
DENNIS J. ROG, Ed.D
*Licensed Psychologist*

### Psychological Evaluation

Name: Lisa Gillard

Date of Birth:  1/22/1967

Date of testing:  5/1/03; 5/7/03

Age: 36

**Reason for Referral:**  Lisa was self-referred because she felt she might have Attention Deficit Disorder and required adjustments for her in law school.

**Background Information:**  Lisa is currently completing her first year at Southern New England Law School in Dartmouth, Massachusetts.  She reports having difficulty with her attention span and with understanding some of the material.  She particularly is having trouble with the analysis of the material when she has to express herself in writing.

Lisa is the youngest child of four children.  She grew up in Mississippi in an educated family.  The family is positive for some learning and attentional problems in her nieces and nephews.  Her mother has a master's degree.  Her father dropped out of school in the 8th or 9th grade.  According to Lisa, she graduated near to bottom of her high school class. She attended community college and then went on to the University of Mississippi for two years and studied music and English.  She reports that she traveled for a while and moved to Chicago and earned a BA and Masters Degree in English.  She has a strong interest in working with at-risk children and started a company in Chicago to work with them with writing and dance.  She also reports that she taught school in Chicago.

**Behavioral Observations:**  Lisa, an attractive black woman, met with me on two occasions to complete the testing.  She appeared to be a well-educated, articulate woman, although she tended to hop around when she gave her background information to me.  Throughout testing, she often asked me the question I asked her as if she needed more information or didn't understand the question and particularly struggled with visual tasks.  For example, when asked to complete a task which involved sequencing pictures, she put the pictures in a right to left sequence and seemed surprised when the examiner suggested that they go left to right.

Lisa Gillard                                                                                    Page 2

Generally, I felt Lisa worked hard to complete the test and that it is a valid measure of her ability level at this time.

**Tests Administered:**

Wechsler Adult Intelligence Scale-Third Edition
Rey Osterrieth Figure Drawing
Rey Auditory Verbal Learning Test
Stroop Neuropsychological Screening Test
CAARS-Self Report:  Short Version

**Test Results:**  On the Wechsler Adult Intelligence Scale-Third Edition, Lisa achieved a full scale score of 90.  This score falls within the average range at the 21st percentile. There was a significant difference between her verbal scores which fell within the average range, and all of her other scores, which fell within the low average range. Individual scores were as follows:

|                              | Standard Score | Percentile Rank |
|------------------------------|:--------------:|:---------------:|
| Verbal IQ                    | 96             | 39              |
| Performance IQ               | 83             | 13              |
| Verbal Comprehension Index   | 107            | 68              |
| Perceptual Organization Index| 84             | 14              |
| Working Memory Index         | 84             | 14              |
| Perceptual Speed Index       | 91             | 27              |

An Average Individual subtest score is 10 $\pm$3.

Individual subtest scores were as follows:
S = Strength

| Verbal | | Performance | |
|--------|-----|-------------|-----|
| Vocabulary | 14S | Picture Completion | 6 |
| Similarities | 10 | Digit Symbol/Coding | 8 |
| Information | 10 | Block Design | 5 |
| Arithmetic | 7 | Matrix Reasoning | 11S |
| Digit Span | 5 | Picture Arrangement | 7 |
| Letter Number Sequencing | 10 | Symbol Search | 9 |

Lisa's strengths are in her ability to express, and to retrieve information from long-term storage.  She also shows good ability in the area of abstract reasoning and problem solving when the task is untimed.

Lisa is much weaker in visual organization of information when the task involves the ability to focus on the details or when the task is timed. She appears to process nonverbal information slower. This may be partially due to problems of sustaining her attention and concentration over time.

Auditory memory and attention is also an area of weakness. Lisa had difficulty remembering a series of numbers and recalling the details of an arithmetic problem presented verbally. These scores fell within the low average to below average range.

On the Rey Auditory Verbal Learning task, she showed a slow but steady learning curve of 5, 11, 11, 14 and 14 words out of a list of 15 unrelated words. She retained 13 out of the 14 words after an interference trial was given. She added some additional words to the list and circled additional words when given a recognition task. This indicates that there is some interference in her processing and retrieval of auditory information which would be consistent with her lower score on the working memory index on the WAIS-III.

Visual organization and visual memory were also assessed using the Rey Osterreith Figure Drawing Test. Lisa copied the complex figure in primarily a "parts" manner. She was able to see the outside of the figure as a whole. When asked to recall the figure, she lost many of the details. This indicates a weakness in left hemisphere functioning in processing the details of visual information. This is typical of people who process information globally but have difficulty with focusing on detail.

Lisa was given the Stroop Neuropsychological Screening test to assess attention and her ability to screen out conflicting information. This score is highly associated with a weakness in left hemisphere functioning related to underlying brain damage or a learning disability. On this task Lisa scored at the 4th percentile when compared to people of similar age.

On the CAARS self report, Lisa indicated significant problems in attention, memory and hyperactivity and restlessness. Her scores fell within the clinical range or above the 98th percentile.

**Summary and Recommendations:** Lisa is a 36-year-old woman who was self-referred due to her concerns regarding her struggle in law school. Testing shows that she has a strength in language and retrieval of long-term information. She has significant weaknesses in left hemisphere functioning including focusing on detail, short-term memory and attention and concentration. Her self-report is consistent with this finding. I am suggesting that Lisa make a follow up appointment with a neurologist, Dr. Jeffrey Wishick for his opinion regarding whether he believes strategies/accommodations or medication would be helpful to improve her focus and memory and to further evaluate her attention and memory problems.

Lisa is someone who will struggle with the details of information. She will be able to see and understand the larger gestalt. Law school is likely to be a significant challenge for her.

Dorothy B. Brown Ph.D., Licensed Psychologist

# TIVERTON PSYCHOLOGICAL SERVICES

2128 Main Road
Tiverton, Rhode Island 02878
(401) 624-9972

DOROTHY B. BROWN, F
ANNE M. DAVIDGE, F
DENNIS J. ROG, E
*Licensed Psychok*

April 22, 2004

To Whom It May Concern:

Based on my psychological evaluation on Lisa Gillard and my review of it with her on 4/21/2004, I would support Lisa taking exams by having them read to her and by giving her extra time to complete tests. This would be particularly true when a test is multiple choice as Lisa has difficulty encoding visual information. She has a visual learning disability and is significantly stronger in her language/verbal skills.

Sincerely,

*Dorothy B Brown*

Dorothy B. Brown PhD

Lisa Gillard                                                                    Page 3

Lisa is much weaker in visual organization of information when the task involves the
ability to focus on the details or when the task is timed. She appears to process nonverbal
information slower. This may be partially due to problems of sustaining her attention and
concentration over time.

Auditory memory and attention is also an area of weakness. Lisa had difficulty
remembering a series of numbers and recalling the details of an arithmetic problem
presented verbally. These scores fell within the low average to below average range.

On the Rey Auditory Verbal Learning task, she showed a slow but steady learning curve
of 5, 11, 11, 14 and 14 words out of a list of 15 unrelated words. She retained 13 out of
the 14 words after an interference trial was given. She added some additional words to
the list and circled additional words when given a recognition task. This indicates that
there is some interference in her processing and retrieval of auditory information which
would be consistent with her lower score on the working memory index on the WAIS-III.

Visual organization and visual memory were also assessed using the Rey Osterreith
Figure Drawing Test. Lisa copied the complex figure in primarily a "parts" manner. She
was able to see the outside of the figure as a whole. When asked to recall the figure, she
lost many of the details. This indicates a weakness in left hemisphere functioning in
processing the details of visual information. This is typical of people who process
information globally but have difficulty with focusing on detail.

Lisa was given the Stroop Neuropsychological Screening test to assess attention and her
ability to screen out conflicting information. This score is highly associated with a
weakness in left hemisphere functioning related to underlying brain damage or a learning
disability. On this task Lisa scored at the 4th percentile when compared to people of
similar age.

On the CAARS self report, Lisa indicated significant problems in attention, memory and
hyperactivity and restlessness. Her scores fell within the clinical range or above the 98th
percentile.

**Summary and Recommendations:** Lisa is a 36-year-old woman who was self-referred
due to her concerns regarding her struggle in law school. Testing shows that she has a
strength in language and retrieval of long-term information. She has significant
weaknesses in left hemisphere functioning including focusing on detail, short-term
memory and attention and concentration. Her self-report is consistent with this finding.
I am suggesting that Lisa make a follow up appointment with a neurologist, Dr. Jeffrey
Wishick for his opinion regarding whether he believes strategies/accommodations or
medication would be helpful to improve her focus and memory and to further evaluate
her attention and memory problems.

Lisa is someone who will struggle with the details of information. She will be able to see
and understand the larger gestalt. Law school is likely to be a significant challenge for
her.

Dorothy B. Brown Ph.D., Licensed Psychologist

Presorted Standard
U.S. Postage
Paid
Permit No. 42
Swansea, MA

Postal Customer

Newspaper Advertising
Gets The Job Done!



BONA FIDE CLASSIFIED

Friday, December 31, 2004

# You get what you pay for at Umass Law

Hey! Wanna go to law school?

Lucky you.

If the behind-the-scenes folks have their way, pretty soon you will be able to attend a public law school right here in Bristol County.



Lynn and Dion

Marc Munroe Dion

It's important that you attend a public law school because those private law schools cost way too much money and make you study way too much law and stuff.

If the University of Massachusetts acquires the Southern New England School of Law, you won't have to worry about firming up your grade point average to get into law school.

Why, right now, this fine unaccredited institution has entrance standards that are, shall we say, comfortably low.

Can't get into beauty school? Fail the entrance exam for tractor trailer driver school?

No sweat, Bubba. Give law school a try.

Need more reasons to go to the local law school?

Perhaps the best reason is that many SNESL graduates never pass the bar exam. So, you'll get a law degree without the threat of actually having to practice boring old law. Phew!

While the American Bar Association isn't impressed enough to give its accreditation to SNESL, UMass is impressed enough to try to buy the place.

Go figure.

The best thing about this acquisition deal is that it's not going to cost anything.

Cheap, no?

No.

The notion of a law school that can be acquired for free is being offered by UMass trustees. These are the same folks who handed a whacking huge pension to outgoing UMass prez and statewide embarrassment Billy Bulger. In other words, don't let these guys play with the rent money.

My guess and, hey, it's just a guess, is that this deal is going to cost a lot more than any early estimate reveals.

I bet the price on this deal will grow just the way the price of the Big Dig grew. The folks in charge know that, once you get a shovel in the ground, you can't turn back, so you might as well keep throwing money down the hole.

By the way, before anyone starts writing letters to the editor, let me note that, yes, in this case, I am a "naysayer."

Just now, SNESL is known as the kind of place where civil servants can go to get a law degree that will increase their salaries while not actually qualifying them to practice law. You'd think that would be good enough, wouldn't you?

But no.

The new UMass Law School would offer a couple of specialties to its students.

We're told that a lot of the lawyers coming out of the new entity will have special qualifications in "public-service law."

In other words, since graduates of real law schools are increasingly unwilling to represent indigent crack dealers for short money, the new law school will offer sort of a second-line law degree, one tailored to fit the assumed needs of southeastern Massachusetts and our indigent criminal population. Cheap lawyers for cheap cases.

The new entity will offer a specialty in immigration law, too, since the powers that be assume almost everyone "down here" is not only indigent, but in immediate danger of being deported.

One thing I do believe about this proposed law school acquisition. It's said that adding the new law school won't "threaten" private law schools like Harvard.

It won't.



# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Lisa J. Gillard

## DEFENDANTS

Southern New England School of Law

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Bristol
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   Bristol
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Representation: Pro Se Division

ATTORNEYS (IF KNOWN)

05 - 10244 RCL

## II. BASIS OF JURISDICTION   (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 U.S. Government
Plaintiff

☐ 2 U.S. Government
Defendant

☐ 3 Federal Question
(U.S. Government Not a Party)

☐ 4 Diversity
(Indicate Citizenship of Parties
in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only)                        AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## V. NATURE OF SUIT   (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane    ☐ 362 Personal Injury – | ☐ 620 Other Food & Drug |  | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product    Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability    ☐ 365 Personal Injury – | of Property 21 USC 881 | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &    Product Liability | ☐ 630 Liquor Laws |  | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander    ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'    Injury Product Liability | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine    **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product    ☐ 370 Other Fraud | ☐ 690 Other |  | Exchange |
| ☐ 153 Recovery of Overpayment | Liability    ☐ 371 Truth in Lending |  | **SOCIAL SECURITY** | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle    ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle    Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability    ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury    Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting    ☐ 510 Motions to Vacate | & Disclosure Act |  | ☐ 895 Freedom of |
| ☐ 220 Foreclosure | ☐ 442 Employment    Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/    **HABEAS CORPUS:** | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 900 Appeal of Fee Determination |
| ☐ 240 Torts to Land | Accommodations    ☐ 530 General |  | or Defendant) | Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare    ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS – Third Party | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☒ 440 Other Civil Rights    ☐ 540 Mandamus & Other | Security Act | 26 USC 7609 | State Statutes |
|  |    ☐ 550 Civil Rights |  |  | ☐ 890 Other Statutory Actions |
|  |    ☐ 555 Prison Condition |  |  |  |

## VI. CAUSE OF ACTION   (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

42 U.S.C. Section 12132 and 42 U.S.C. Section 12182 (a): Discriminatory Dismissal based on
Poor Academic Performance (Learning Disability) and Nature of Circumstances (Defamation).

## VII. REQUESTED IN   ☐ CHECK IF THIS IS A CLASS ACTION
COMPLAINT:   UNDER F.R.C.P. 23

DEMAND $
See: Complaint

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ YES   ☒ NO

## VIII. RELATED CASE(S) (See instructions):
IF ANY   None.

JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)_____Lisa J. Gillard_____

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL
   COVER SHEET.  (SEE LOCAL RULE 40.1(A)(1)).

   05 - 10244 RCL

   ___  I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ___  II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,     *Also complete AO 120 or AO 121
             740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.       for patent, trademark or copyright cases

   ___  III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
             315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
             380, 385, 450, 891.

   ___  IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
             690, 810, 861-865, 870, 871, 875, 900.

   ___  V.    150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)).  IF MORE THAN ONE PRIOR RELATED CASE
   HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

   ___None._____

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS
   COURT?
                                                        YES        NO    X

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE
   PUBLIC INTEREST?    (SEE 28 USC §2403)
                                                        YES        NO
   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?
                                                        YES        NO    X

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE
   28 USC §2284?
                                                        YES        NO    X

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE
   COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE
   SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).
                                                        YES        NO

   A.   IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

        EASTERN DIVISION              CENTRAL DIVISION              WESTERN DIVISION

   B.   IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING
        GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?

        EASTERN DIVISION              CENTRAL DIVISION              WESTERN DIVISION

   (PLEASE TYPE OR PRINT)
   ATTORNEY'S NAME _____

   ADDRESS_____

   TELEPHONE NO. _____

   (Cover sheet local.wpd - 11/27/00)