UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LISA J. GILLARD<br>                Plaintiff<br><br>v.<br><br>SOUTHERN NEW ENGLAND SCHOOL OF<br>LAW<br>                Defendant | DOCKET NO. 05-10244-RCL |

## ANSWER OF DEFENDANT SOUTHERN NEW ENGLAND SCHOOL OF LAW

The defendant Southern New England School of Law ("SNESL") was served with a one-page, unsigned "Complaint" on March 7, 2005. The Complaint is not in conventional form and does not comply with Fed. R. Civ. P. 8. The plaintiff Lisa Gillard, however, is pro se. A review of the docket shows that the plaintiff made a multi-page filing, the first two pages of which appear to contain the plaintiff's allegations. Accordingly, the defendant will treat these two pages as the Complaint and will address the nineteen unnumbered paragraphs in them. A copy of the Complaint with paragraph reference numbers added by the defendant's counsel is attached as Exhibit A.

## ANSWER

1.      This paragraph is a conclusion of law requiring no answer.

2.      The defendant admits that on or about May 7, 2003 it received a report from Dorothy P. Brown, Ph.D. indicating the plaintiff "has an Attention Deficit Disorder diagnosis and has weaknesses in the areas of visual speed, visual perceptual organization and working

memory." The report otherwise speaks for itself. Further answering, the defendant says that this is the only report it has ever received from Dr. Brown or any other psychologist indicating that the plaintiff has a learning disability.

3.    The defendant denies that it was negligent, denies that the plaintiff was the victim of intentional infliction of emotional distress, denies that Professor Irene Scharf accused her of "stalking," and denies that her learning disability worsened.

4.    The defendant denies that Dean Robert Ward was given "notice of a potential learning disability" on June 29, 2002. The defendant admits that on June 29, 2002, in seeking admission to SNESL the plaintiff stated that her low test scores were not adequate measures of her abilities.

5.    The defendant admits that after mid-term exams in 2002 Dean Robert Ward suggested that the plaintiff consult a psychologist to determine whether she had a learning disability. The defendant denies that Dean Ward made this suggestion because he knew she was "having difficulty reading sequenced multiple choice questions during exams." The defendant denies that Dean Michael Hillinger or Professor Irene Scharf suggested that the plaintiff consult a psychologist. The defendant denies that Dean Hillinger or Professor Scharf suggested that the plaintiff receive special testing accommodations. The defendant admits that Dr. Brown evaluated the plaintiff. Further answering, the defendant says that Dr. Brown recommended that SNESL give the plaintiff an extra hour and allow her to use a computer for certain portions of examinations. The defendant made these accommodations for the plaintiff. Notwithstanding the accommodations, the plaintiff's marks for second semester declined from those for first semester and she was dismissed for failing required courses. The defendant admits that Dr. Brown's letter

2

indicates that it is not a "complete report," but the defendant has never received a "complete report" from Dr. Brown, nor has Dr. Brown or any other psychologist treating the plaintiff requested that the defendant extend different or additional accommodations to the plaintiff.

6.      The defendant admits that the plaintiff met with Dr. Christine Frizzell on or about February 3, 2003 and admits that she was allowed to transfer from Professor Scharf's torts class. The defendant denies that the transfer was related to the meeting with Dr. Frizzell and denies that Professor Scharf accused the plaintiff of stalking. The defendant denies the remaining allegations of this paragraph.

7.      The defendant says that the plaintiff's written submissions to the Academic Standards Committee on May 16, 2003 and June 9, 2003 speak for themselves.

8.      The defendant admits that the plaintiff was dismissed from SNESL on June 26, 2003 based on her academic record and the circumstances of her case.

9.      This paragraph contains no allegations requiring an answer.

10.     This paragraph is a conclusion of law requiring no answer.

11.     Denied.

12.     This paragraph is a conclusion of law requiring no answer.

13.     Denied.

14.     This paragraph is a conclusion of law requiring no answer.

15.     Denied.

16.    This paragraph is a conclusion of law requiring no answer.

17.    Denied.

18.    Denied.

19.    The defendant admits that Professor Scharf did not accuse the plaintiff of stalking, admits that it transferred the plaintiff at her request from Professor Scharf's torts class, and admits that Dean Ward requested that the plaintiff not talk about the matter.  Further answering, the defendant denies that the plaintiff was harassed and denies that she was transferred from Professor Scharf's class because of harassment.

## FIRST AFFIRMATIVE DEFENSE

The plaintiff has failed to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

The Complaint must be dismissed because of insufficiency of process.

## THIRD AFFIRMATIVE DEFENSE

The Complaint must be dismissed because of insufficiency of service of process.

## FOURTH AFFIRMATIVE DEFENSE

The Complaint must be dismissed because to the extent plaintiff requested accommodations, the defendant gave them.

## FIFTH AFFIRMATIVE DEFENSE

The defendant says that the plaintiff cannot establish that she is a qualified handicapped person under the applicable statutes and regulations.

4

## SIXTH AFFIRMATIVE DEFENSE

The defendant says that the plaintiff's right to further or different accommodations was not clearly established when dismissal occurred.

## SEVENTH AFFIRMATIVE DEFENSE

The defendant says that the plaintiff's academic dismissal was based on legitimate nondiscriminatory reasons.

## EIGHTH AFFIRMATIVE DEFENSE

The defendant says that plaintiff was not qualified to meet legitimate nondiscriminatory academic standards and is not a "qualified handicapped person" under applicable statutes and regulations.

## NINTH AFFIRMATIVE DEFENSE

The defendant says that to the extent it had any obligations to the plaintiff, such obligations were fully, completely, and properly performed in every respect.

## TENTH AFFIRMATIVE DEFENSE

The plaintiff has not alleged that she is a qualified person with a disability.

SOUTHERN NEW ENGLAND SCHOOL OF LAW,

By its attorneys,

/s/

_____
Allen N. David, BBO # 115000
Elizabeth A. Houlding, BBO # 645981
Peabody & Arnold LLP
30 Rowes Wharf
Boston, MA  02110
(617) 951-2100

Dated: March 18, 2005
PABOS2:ADAVID:610073_1
9502-91139

5

05 - 10244 RCL
*Referred to MJ RBColling*

① **Complaint:** Discriminatory Dismissal (ADA/Title III/504/Civil Rights) (Disability Law) (Education Rights/Policy)

② **Facts:**

**Learning Disability**
I have been diagnosed with a learning disability, a visual learning disorder and ADD. Documents were given to Southern New England School of Law officials prior to final exams with a notice stating that "a complete evaluation and report have not been completed." (Ref.: 05/07/03)

③ **Negligence: Intentional Infliction of Emotional Distress**
I was a victim via "intentional infliction of emotional distress" by Irene M. Scharf, an assigned Law Advisor and Torts Instructor due to her accusation of stalking. While SNESL has denied that this ever happening, this accusation worsen my learning disability because it caused severe emotional distress long before final exams. (Ref.: 02/04/03)

④ **Analysis:**

**Learning Disability**
On June 29, 2002 Dean Ward was given notice of a potential learning disability in my initial statement to him before actual admissions into SNESL. I affirmed that my low-test scores on ACT, GRE and LSAT (taken twice) were not effective measurements of my potential as an attorney. (Ref.: 06/29/02)

⑤ After mid-term exams in 2002, Dean Ward, Dean Hillinger and Irene M. Scharf suggested that I receive special testing accommodations because I was having difficulty reading sequenced multiple-choice questions during exams. Dean Ward acknowledged this fact, and suggested that I meet with Dr. Christine Frizzell at UMass, Dartmouth. Dr. Dorothy B. Brown gave me an evaluation, and I was dismissed from SNESL before her evaluation was complete. (Ref.: 05/07/03)

⑥ **Negligence: Intentional Infliction of Emotional Distress**
On February 3, 2003, I met with Dr. Christine Frizzell, regarding test-taking methods, and was allowed to transfer from Irene M. Scharf's class due to the above mentioned accusation. Her remark was intentional because the Dean's approval for a transfer without her permission from Henry Arruda's Writing Class substantiated her accusation. This accusation worsened my learning disability because it caused severe emotional distress, loss of concentration, anxieties, focus and memory months prior to exams. (Ref.: 11/16/02; 02/03/03; 02/04/03)

⑦ **Conclusion:** In sum, I explained to the Academic Standards Committee – Dean Hillinger and Professor Cleary – that my academic achievement record and circumstances of my case (e.g. low scores in two classes were due to my visual learning disability and a false accusation made against me) did not adequately reflect my potential as an attorney. Moreover, I explained that any African American older woman or a reasonable and prudent person under the same set of circumstances more than likely would not do well in any law program. (Ref.: 05/16/03; 06/09/03)

⑧ On June 26, 2003, after two written appeals to the Deans and full Faculty, I was dismissed based on my academic record and circumstances of my case. (Ref.: 06/26/03)

⑨ Thus, I seek your Legal Advocacy and Protection for the following: 1) Review and Correction of Student File, 2) A Written Statement of Apology by Ward, Hillinger and Scharf for Defamation, 3) Out-of-Pocket Damages for Negligence and Loss of potential Compensation, and 4) Court and Legal Costs.

## DISCRIMINATORY DISMISSAL FROM SOUTHERN NEW ENGLAND SCHOOL OF LAW
## FALL SEMESTER 2002 – SUMMER SEMESTER 2003
## OUTLINE

1. **Learning Disability (Timeline of Documentation)**
   According to the Office of Civil Rights, United States Department of Education, ADA and 504 Rules and Regulations, most postsecondary schools must have a person called the Section 504 Coordinator, ADA Coordinator, or Disability Services Coordinator.

   - Southern New England School of Law violated this rule because they do not have a person identified to serve in this capacity, during the 2002-2003 my academic school year.

2. **Learning Disability (Academic Adjustments, if not working appropriately)**
   According to the OCR, US Department of Education, if the academic adjustment is not working, the school should work with the student to identify an appropriate academic adjustment.

   - SNESL violated this rule with extreme prejudice because they dismissed me without neither waiting for my evaluation to be completed, nor conducting their own assessment, or offering an academic probation to re-take two courses.

3. **Learning Disability (Required Academic Adjustments by the School)**
   According to the OCR, Rules and Regulations, colleges and universities are required to provide students with appropriate adjustments (e.g. taped texts, notetakers, interpreters, readers, and specialized computer equipment).

   - SNESL violated this rule because they failed to wait and review my completed evaluation that instructed a "reader" for exams.

4. **Negligence: Intentional Infliction of Emotional Distress (By SNESL faculty, Irene Scharf)**
   According to the OCR laws, both Section 504 and Title II (ADA) make unlawful for people to harass those because of their disability.

   - SNESL violated this rule because an assigned law advisor and Torts Instructor, Irene Scharf accused me of stalking her as a retaliatory act against me because I asserted myself with a learning disability concern, and requested to the Associate Dean a Legal Writing class transfer without her approval.

     o SNESL Instructor, Irene Scharf's unapproved transfer substantiated her accusation because she told me not to attend the new class and that the transfer was illegal without her approval.

     o SNESL later denied that Scharf's accusation ever happened, informed me not so say anything about the matter, and transferred me from Scharf's Torts class because of my request to prevent further harassment (e.g. verbal assault and defamation) by Irene Scharf.