**Lisa Gillard**

P.O. Box 990695, Boston, MA 02199 • LGillard@Bridgew.Edu • 1-773-425-0307

June 16, 2005

Judge Reginald C. Lindsay
United States District Court
District Court of Massachusetts
John Joseph Moakley Courthouse
One Courthouse Way
Boston, MA 02210

      Re:    Lisa J. Gillard vs. Southern New England School of Law
               Docket No. 05-10244-RCL

Dear Judge Lindsay:

In pursuant to LR 26.6, I request a Motion to Amend the Complaint.

Enclosed is a copy of the Amended Complaint for review.

Concerns or questions please feel free to contact me.

I thank you for your attention to this matter.

Sincerely,

*Lisa J. Gillard*

Lisa Gillard
PRO SE

Address Information:
P.O. Box 5213
Chicago, IL 60680-5213

Cc: File Copy

## UNITED STATES DISTRICT COURT OF THE DISTRICT MASSACHUSETTS

Lisa J. Gillard

                                                                    CIVIL ACTION

                      **Plaintiff**

v.

                                                                    No Jury Trial Demand
                                                                    05-10244-RCL

**Southern New England School of Law:**

                    **Defendant**

## INTRODUCTION

1.       The Plaintiff, Lisa J. Gillard, a person with a disability, brings this action for declaratory and injunctive relief and damages against defendants, Southern New England School of Law, alleging violations of Title III of the Americans with Disabilities Act, 42 U. S. C. 12182, and for the Rehabilitation Act of 1973, 504 (a) for denying Ms. Gillard the reasonable accommodations she requires to participate in a law school setting, by not adopting ADA policy that prohibits burdens on adult individuals with disabilities.

2.       The Defendant, Southern New England School of Law is an independent, non-profit educational institution accredited by the New England Association of Schools and Colleges and approved by the Commonwealth of Massachusetts to award the Juris Doctor degree. Its mission includes a traditional focus on developing student's analytical skills in the law, to provide students with the opportunity to begin developing practical legal skills so as to have a realistic grasp of what practicing law means, and to introduce students to the fundamental human questions connected with the study and practice of law so that they may more fully understand the responsibilities of being a lawyer and thus be better prepared to face the challenges involved in the practice of law in American society.

3.       On May 12, 2003 and June 26, 2003, Southern New England School of Law sent a notice of academic dismissal and later dismissed Ms. Gillard based on poor academic performance and nature of circumstances. While Ms. Gillard submitted in a letter prior to admissions on her low-test scores, and an evaluation notice by Dr. Dorothy B. Brown that gave notice on her disability, Ms. Gillard's disability was neither acknowledged, nor fully regarded by the law program under Americans with Disabilities Act of 1990 and the Rehabilitation Act of 1973. Further, Ms. Gillard feels that her disability was worsened by a retaliatory act made by faculty at the school.

4.       Subsequently, after Ms. Gillard appealed the academic dismissal notices, she filed several administrative complaints to various agencies, commissions, individuals, and organizations. Ms. Gillard finally filed a complaint to the United States District Court of the District of Massachusetts against Southern New England School of Law under the Americans with Disabilities Act of 1990, and the Rehabilitation Act of 1973.

## PARTIES

5.       **Plaintiff, Lisa J. Gillard ("Ms. Gillard")** is a person with a disability under the Americans with Disabilities Act of 1990. She was diagnosed on May 1, 2003, May 7, 2003, and April 22, 2004 by Dr. Dorothy B. Brown. Disability needs were advised, and some accommodations were made.

6.       At times relevant to this action, Ms. Gillard lived at 1261 Church Street, Apt. B13, New Bedford, Massachusetts, 02745 and was a student at Southern New England School of Law.

7.       Since she began her education, Ms. Gillard has had low scores on standardized tests, including ACT, GRE and LSAT scores. In her entire college career, Ms. Gillard's low scores on standardized tests were compensated by her language abilities in her Liberal Arts and English studies. Ms. Gillard has not experienced intensive reading on multiple-choice exams until her pursuit to study law.

8.       **Defendant, Southern New England School of Law ("SNESL")** is located at 333 Faunce Corner Road in North Dartmouth, Massachusetts, 02747.

9.       **Defendant, SNESL** is an independent, non-profit educational institution accredited by the New England Association of Schools and Colleges and approved by the Commonwealth of Massachusetts to award the Juris Doctor degree.

10      **Defendant, SNESL** is not approved under the Standards and Rules of Procedure for the Approval of Law Schools by the American Bar Association.

11.     **Defendant, SNESL** complies to Title IV of the Higher Education Act of 1965 and regulations promulgated pursuant to the act by the federal government.

> **Section 400 under Title IV** provides that:
> (a) Purpose – It is the purpose of this part, to assist in making available the benefits of postsecondary education to eligible students (defined in accordance with section 484) in institutions of higher education by –
>
> (1) providing Federal Pell Grants to all eligible students;

   (2) providing supplemental educational opportunity grants to those students who demonstrate financial need;

   (3) providing for payments to the state to assist them in making financial aid available to such students;

   (4) providing for special programs and projects designed (a) to identify and encourage qualified youths for financial or cultural need with a potential for postsecondary education, (b) to prepare students from low-income families for postsecondary education, and (c) to provide remedial (including remedial language study) and other services to students; and

   (5) providing assistance to institutions of higher education.

  (b) Secretary Required to Carry Out Purposes – The Secretary shall, in accordance with subparts 1 through 8, carry out programs to achieve the purposes of this part.

12.  **Defendant, SNESL** complies to the 1998 Amendments to the Higher Education Act of 1965, an act provides that:

    To extend the authorization of programs under
    the Higher Education Act of 1965, and for other
    purposes.

13.  **Defendant, SNESL** should have known that Ms. Gillard scored lower on her exams because of her initial letter to the school prior to admissions, and lower LSAT scores.

14.  **Defendant, SNESL** should have known that wrongful allegations of stalking as a retaliatory action against Ms. Gillard referred to as a "misunderstanding" would worsen Ms. Gillard's disability because it created a very hostile, intimidating, and threatening environment, and it interfered with her learning abilities.

15.  **Defendant, SNESL** should have acknowledged Dr. Dorothy B. Brown's initial note dated on May 7, 2003 stating that a "complete report has not been completed" before they dismissed Ms. Gillard from the school for poor academic performance.

16.  **Defendant, SNESL** should have known that Ms. Gillard would have some difficulty in her course materials as a qualified disabled student because they do not have a Disability Resource Center, ADA Coordinator or 504 Coordinator to assist students with disabilities at the school.

## JURISDICTION AND VENUE

17.     This action is brought pursuant to the Americans with Disabilities Act, 42 U. S. C. 12182 ("ADA"), and the Rehabilitation Act of 1973, 504 (a).

18.     Venue lies in the United States District Court of the District of Massachusetts.

## FACTS

19.     On June 29, 2002, Dean Ward was given a notice by Ms. Gillard before actual admissions acknowledging her low scores on standardized tests, ACT, GRE and LSAT taken twice.

20.     On or after mid-term exams in 2002, Ms. Gillard approached Professor Scharf, Dean Hillinger and Dean Ward regarding her problems with understanding some of the course materials, and they all suggested that Ms. Gillard seek a psychological evaluation to further determine the test-taking problems and for her to receive accommodations prior to her final exams.

21.     On November 16, 2002, Ms. Gillard partitioned to Dean Hillinger for a Writing class transfer from Professor Arruda's class to Professor Folino's class because Ms. Gillard felt that she had difficulties understanding some of her class materials without assistance by the faculty. While Professor Scharf is the Legal Writing Director in the law program, Ms. Gillard's assigned law advisor and Torts Instructor, Dean Hillinger approved Ms. Gillard's class transfer without Professor Scharf's approval.

22.     On and after November 16, 2002, Professor Scharf became very angry and hostile by the transfer decision, made Ms. Gillard aware of her disapproval, and told Ms. Gillard not to attend the class because the transfer was illegal with her final approval.

23.     On January 30, 2003, Dean Ward requested a meeting with Ms. Gillard in his office because he felt like Ms. Gillard was having problems in the law program. Dean Ward scheduled a mandatory meeting between Ms. Gillard and Dr. Christine Frizzell at the University of Massachusetts at Dartmouth campus.

24.     On February 3, 2003, Ms. Gillard met with Dr. Christine Frizzell at the University of Massachusetts at Dartmouth campus for what she thought was ideas on test-taking methods. Dr. Frizzell later told Ms. Gillard that Professor Scharf wrote a note to Dean Ward and Hillinger regarding stalking allegations made by Ms. Gillard.

25.     On February 3, 2003, Ms. Gillard later met with Dean Ward and he confirmed the stalking allegations via written note by Scharf. Dean Ward also stated that Dean Hillinger had placed the written note on his desk for review.

26.	On February 3, 2003, Ms. Gillard requested a transfer from Professor Scharf's Torts class to Professor Cleary, and requested a new law advisor, Professor Rudko because Ms. Gillard felt that Professor Scharf's wrongful allegations as a retaliatory act were harmful, and interfered and worsened Ms. Gillard's abilities to focus and learn because it creating a very hostile, intimidating, and threatening learning environment at the school.

27.	On February 4, 2003, Ms. Gillard received a letter in mail confirming the class transfer from Dean Ward. In letter Dean Ward requested for Ms. Gillard not say anything about the matters involving herself and Professor Scharf, for Ms. Gillard not to have further contact with Professor Scharf, and for Ms. Gillard to continue to see Dr. Christine Frizzell at the University of Massachusetts, Dartmouth campus.

28.	On February 4, 2003, Ms. Gillard received an email from Dean Ward stating that Dean Hillinger and Professor Scharf wanted Ms. Gillard a to know that Professor Scharf never used the term "stalking." Dean Ward noted that it was an "misunderstanding."

29.	On or about February 3, 2003 through May 1, 2003, Ms. Gillard sought an evaluation and assistance from licensed psychologists in the New England area without the assistance from the law program because Southern New England School of Law does not have a Disability Resource Center, or an ADA or Disability Services Coordinator.

30.	On May 1, 2003 and May 7, 2003, Ms. Gillard was evaluated by Dr. Dorothy B. Brown at Tiverton Psychological Services in Tiverton, Rhode Island.

31.	On May 7, 2003, Dr. Dorothy B. Brown sent a written notice via fax to Southern New England School of Law requested some accommodations for Ms. Gillard because Ms. Gillard a has Attention Deficit Disorder ("ADD") and has a weakness in the areas of visual speed, visual perceptual organization and working memory.

32.	On May 7, 2003, Dr. Dorothy B. Brown sent a written notice via fax stating that Ms. Gillard clearly has special needs and a complete evaluation and report have not been completed.

33.	On May 12, 2003, Southern New England School of Law sent Ms. Gillard a letter of academic dismissal via mail.

34.	On May 16, 2003, Ms. Gillard partitioned the academic dismissal notice to the Academic Standards Committee that included Associate Dean Michael Hillinger and Professor Cleary citing a learning disability, class transfer and wrongful allegations of stalking by Professor Scharf.

35.     On June 5, 2003, Southern New England School of Law dismissed Ms. Gillard from the law program based on her academic record and circumstances of her case.

36.     On June 9, 2002, Ms. Gillard a made a final appeal to Southern New England School of Law citing poor academic performance as a result of her disability and the nature of circumstances as a result of a retaliatory act by faculty in the law program, and the school's failure to adopt the policy of the mission statement.

37.     On or about June 5 - 16, 2003, Ms. Gillard received her psychological evaluation from Dr. Dorothy B. Brown's office via mail.

38.     On June 26, 2003, Ms. Gillard was dismissed from Southern New England School of Law based on her academic record and circumstances of her case.

39.     Between June 26, 2003 and April 21, 2004, Ms. Gillard consulted with various agencies, counselors, individuals, and organizations about her academic dismissal from Southern New England School of Law, her learning disability and nature of circumstances.

40.     On April 21, 2004, Dr. Dorothy B. Brown consulted with Ms. Gillard about her psychological evaluation, and on April 22, 2004, Dr. Brown wrote a letter stating the best remedy in her opinion for Ms. Gillard's further academic study and testing process.

**COUNT I:   ADA Discrimination Claim**

41.     **Section 12182, Part 36.201** of the ADA provides that:
(a) Prohibition of discrimination. No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodation by any person who owns, leases (or leases to) or operates a place of public accommodations.

42.     Plaintiff incorporates allegations of discriminatory dismissal under Title III of the Americans with Disabilities Act, 42 U. S. C. 12182, Part 36.201 set forth herein.

43.     Ms. Gillard is a person with a disability under the Americans with Disabilities Act of 1990, and is otherwise qualified at Southern New England School of Law.

44.     Southern New England School of Law is a property defendant because the school is an independent, nonprofit educational institution with public accommodations.

**COUNT II:   ADA Rehabilitation Claim**

**Rehabilitation Act of 1973, 504 (a)** provides that:
No organizations and employers can exclude or deny individuals with disabilities an equal opportunity to receive program benefits and services. It defines the rights of individuals with disabilities to participate in, and have access to, program benefits and services.

45.         Ms. Gillard incorporates allegations of discriminatory dismissal under the Rehabilitation Act of 1973, 504 (a) set forth herein.

46.         Ms. Gillard is a qualified person with a disability under the Rehabilitation Act of 1973, 504 (a).

47.         Southern New England School of Law complies to the 1998 Amendments to the Higher Education Act of 1965 because the school accepts federal assistance for student resources, and they do not have an ADA or 504 Coordinator, or Disability Resource Center.

**COUNT III:   ADA Retaliation Claim**

**Section 12182, Part 36.206 Retaliation or coercion** provides that:
(a) No private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by the part, or because that individual has made a charge, testified, assisted, or participated in any manner of in an investigation, proceeding, or hearing under the Act or this part.

(b) No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, on the account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part.

(c) Illustrations of conduct prohibited by this section include, but are not limited to:

(1) Coercing an individual to deny or limit the benefits, services, or advantages which he or she is entitled under the Act or this part;

(2) Threatening, intimidating, or interfering with an individual with a disability who is seeking to obtain or use the goods, services, facilities, privileges, advantages, or accommodations of public accommodations.

(3) Intimidating or threatening any person because that person is assisting or encouraging an individual or group entitled to claim the rights granted or protected by the Act or this part to exercise those rights; or

(4) Retaliating against any person because that person has participated in any investigation or action to enforce the Act or this part.

43.     Ms. Gillard incorporates allegations of discriminatory dismissal under the Americans with Disabilities Act, 42 U. S. C., 12182, Part 36.206 set forth herein.

44.     Ms. Gillard is a qualified person with a disability who enforced a writing class transfer without her Law Advisor, Torts Instructor, and Director of the Writing Program, Professor Irene Scharf's approval because she was having difficulty understanding course materials in that class.

45.     Professor Irene Scharf wrongfully accused Ms. Gillard of stalking as retaliatory act because she did not approve of the Writing class transfer, and she told Ms. Gillard that the class transfer was illegal without her approval, and for her not to attend the class. Her retaliatory accusation of stalking that was later denied created a very hostile, intimidating and threatening learning environment because it interfered and worsened Ms. Gillard's disability.

**WHEREFORE**, Plaintiff respectfully ask that the Court order the following relief:

1.     Review the Plaintiff's file.

2      Correct the Plaintiff's file from Academic Dismissal to an Academic Withdrawal.

3.     Demand that the Defendant write an official letter of apology for Discrimination, Rehabilitation and Retaliation claims under the Americans with Disabilities Act of 1990, and the Rehabilitation Act of 1973.

4.     Award the Plaintiff damages against the Defendant for jointly and severely intentional harm that they have inflicted on her and in her personal life, professional career, and legal pursuits under the Americans with Disabilities Act of 1990, and the Rehabilitation Act of 1973.

5.     Award the Plaintiff $1,000,000.00 for the Retaliation Claim under the Americans with Disabilities Act of 1990.

6.     Award the Plaintiff $800,000.00 for the 4 years loss of compensation because on Plaintiff's 4-year part-time legal student status under the Americans with Disabilities Act of 1990, and the Rehabilitation Act of 1973.

7.        Award such other further relief as this Court may deem appropriate.

>                        Respectfully submitted,
>                        PRO SE
>
>                        BY: *[signature: Lisa J. Gillard]*
>                        Lisa Gillard
>                        P.O. Box 990695
>                        Boston, MA 02199
>                        1-773-425-0307