**UNITED STATES DISTRICT COURT OF THE DISTRICT MASSACHUSETTS**

**Lisa J. Gillard**

|  |  |  |
|---|---|---|
|  | **CIVIL ACTION** | |
|  | : | |
|  | : | |
| **Plaintiff** | : | |
| v. | | |
|  | | **No Jury Trial Demand** |
|  | | **05-10244-RCL** |
| **Southern New England School of Law:** | : | |
|  | : | |
| **Defendant** | : | |

**MEMORANDUM IN SUPPORT OF THE PLAINTIFF'S
OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

---

**STATEMENT OF FACTS**

The plaintiff Lisa J. Gillard entered the defendant Southern New England School of Law (SNESL) as a first year part-time law student in August 2002. At the time she had a Bachelors Degree in Liberal Arts and a Masters Degree in English. Prior to entering SNESL she had taught English at the high school and college levels, and she admitted to the defendant in her initial statement before entry how her "standardized test scores throughout her [my] entire academic career (e. g. ACT, GRE and LSAT – twice including a prep class) are not adequate measurements of her [my] overall achievements as an educator, thinker and more importantly, writer." (See: Exhibit B) Despite her past academic and community accomplishments, she did not do well in the law program at SNESL because she was discriminated against based on her low test scores and a wrongful allegation made by faculty. In June 2003, the plaintiff was dismissed from

SNESL because of her academic record and circumstances of her [your] case. (See: Exhibit B) Under the Americans with Disabilities Act of 1990 (ADA), the plaintiff is handicapped as a matter of law because she lacks the ability to understanding the some of the reading matters due to an inability to apply rules to fact patterns and visa-versa without the assistance of a reader. (See: Exhibit B) Specifically, as a matter of law, the plaintiff is handicapped because she has a "weakness in the areas of visual speed, visual perceptual organization and working memory," and she protected under ADA because her case is reviewed in the 1st Circuit District Court in the Commonwealth of Massachusetts. As will be proven, the plaintiff is a disabled adult learner within the meaning of ADA, and while SNESL granted some accommodations, these accommodations were inadequate because the school dismissed the plaintiff before "a complete evaluation and report" was completed by the licensed psychologist, Dr. Dorothy B. Brown. (See: Exhibit A) Based on the Dr. Brown's initial report on May 7, 2003 to the school, she states that "she [Lisa] clearly has special needs in the above areas according to her testing." (See: Exhibit A)

1.    **The Defendant's Academic Requirements**. SNESL requires part-time first year law students such as the plaintiff to take full year courses in Property, Torts, and Legal Research and Writing. These courses are worth six credits each. In addition, students are required to take a one-semester course in Legal Methods, which is worth one credit. Courses are graded on a 100 point scale. A passing mark is 60, and grades below 70 are considered unsatisfactory. If at the end of the first semester a student has a final grade below 70 or a mid-term grade in a full year course below 70, she is referred to the

Academic Support Program. If at the end of the year a student has either (1) received a cumulative average below 70, (2) failed a required course, (3) received a cumulative total of 9 credits or more of grades below 70, or (4) fails to comply with prior probationary or supervisory conditions, the student is subject to academic dismissal. Dismissal, however, is not automatic. The matter is considered by the Academic Standards Committee, which considers any information the student wishes to submit. If the student is dissatisfied with the decision of the Academic Standards Committee, she can appeal the decision to the full faculty. (Hillinger Aff. 2 and 3)

2.    **The Plaintiff's Academic Performance**. The plaintiff's grades at the end of the first semester were:

| Legal Methods | 66 |
| Legal Writing | 75 |
| Property | 58 |
| Torts | 64 |

However, on November 16, 2002, shortly after pre-mid-terms exams, the plaintiff was having some difficulty understanding the course materials in her Legal Writing class under Henry Arruda. The plaintiff discussed these issues with her then Legal Advisor, Torts Instructor, and Torts tutor, Irene M. Scharf. Irene M. Scharf asked the plaintiff to write down these issues or problems within Arruda's class so that she [Scharf] can speak with him directly about it. The plaintiff also spoke with and wrote a partition to transfer to Michael G. Hillinger, the Associate Dean SNESL. Hillinger said that he would speak

3

with Anne Folino, the other Legal Writing Instructor first, before he would approve the

class transfer.  After Hillinger spoke with Folino, the Legal Writing class transfer was

approved on behalf of the plaintiff.  (See: Exhibit B)  Then, after weekly approved

meetings and email tutorials with Irene M. Scharf, the plaintiff noticed a change in

Scharf's disposition, especially after the plaintiff explained the approved and granted

class transfer by Hillinger beginning the spring semester 2003. At that point, between

Nov. 16, 2002 and mid-term exams in December 2002, Irene M. Scharf became very

angry, hostile and upset with the plaintiff and instructed her orally not to attend the new

writing class because the transfer was illegal without her [Scharf] approval. At the end of

the semester, the plaintiff was mentally and emotionally distressed by the intimidation

tactics, anguish, class and study interferences by faculty, and open disapproval and

dissention between administration and faculty over writing class transfer matter. (See:

Exhibit D)

On January 23, 2003, the plaintiff was advised to the Academic Support Program

because her grades were unsatisfactory. The plaintiff's second semester grades were:

| Legal Writing | 69 |
| Property | 54 |
| Torts | 59 |

As a result of the writing class transfer from Arruda to Folino, and apparent dissention

between administration [Hillinger] and faculty [Scharf], and the plaintiff and Scharf, the

plaintiff's in class discussions and weekly Torts tutorials were very uncomfortable

because of the unapproved writing class by Scharf.  In fact, it was Irene M. Scharf who

4

first noticed that the plaintiff had some difficulty understanding the reading materials with Tort problems, and suggested that she speak with Hillinger, who referred her to Robert Ward, the Dean, for special accommodations for final exams.

However, on February 3, 2003, the plaintiff was sent by Robert Ward to meet Dr. Christine Frizzell, Director of the Counseling Center at the University of Massachusetts, Dartmouth campus. During that first time and mandatory office visit, the plaintiff was told by Dr. Frizzell and on that same day by Robert Ward that Irene M. Scharf alleged the plaintiff of "stalking" her. (See: Exhibit C) The plaintiff after feeling wrongfully accused because of an unapproved transfer as an act of retaliation by Scharf requested to be removed from Scharf's Torts class, and to receive a new law advisor, Frances Rudko. Robert Ward granted this request after acknowledging and confirming this "stalking" allegation to the plaintiff on February 3, 2003, and instructed the plaintiff to do the following: (1) "not to discuss the matters involving her [yourself] and Irene Scharf, (2) to have no further contact with Irene Scharf, and (3) to continue to meet with Christine Frizzell at UMD." (See: Exhibit C) At the end of the semester the plaintiff's cumulative average was 61.9, according to her academic record at SNESL.

On May 12, 2003, the plaintiff was notified of an academic dismissal, and the plaintiff appealed the dismissal notice on May 16, 2003. (See: Exhibit B). On June 5, 2003, the plaintiff's first appeal was denied. (See: Exhibit B) On June 9, 2003, the plaintiff filed a final notice of appeal to the Full Faculty, and on June 26, 2003, the plaintiff was denied admissions into the law program. (See: Exhibit B)

**3.**    **SNESL's Accommodations for the Plaintiff**. The plaintiff made three requests

for accommodations while she was a part-time student, and the defendant granted all

three. First, at the end of the first semester, the plaintiff requested a Legal Writing class

transfer because the plaintiff did not understand the writing and revision processes, and

policies and procedures for tutorial assistance because of the following: (1) it was

"impossible to understand the assignment, (2) [to] adopt the instructor's style and (3) [to]

develop writing skills beyond satisfactory" without tutorial assistance. (See: Exhibit B)

Second, at the beginning of the second semester, the plaintiff requested a Torts class

transfer because of a wrongful allegation and retaliation act of "stalking" by Irene Scharf,

her Torts Instructor, due to a previous unapproved writing class transfer from fall

semester 2002. Finally, on May 7, 2003 prior to final exams scheduled on May 9, 2003,

and May 12, 2003, the plaintiff requested testing accommodations based on Dr. Dorothy

Brown's, a licensed psychologist, report for extra time and computer use. However, this

evaluation was a preliminary suggestion because her "complete report have not been

completed." (See: Exhibit A)

In all three cases, the plaintiff did not do well in the law program because of the

following: (1) previous struggles with understanding the materials for exams, (2) search

for a licensed psychologist to further assist with her learning disorder for class

preparations and exams without assistance because the school does not have an ADA or

Disability Resource Center, and (3) a wrongful allegation of stalking that grossly

interfered and worsened the plaintiff's learning disability causing anxieties, lack of focus,

mental anguish and emotional distress. (See: Exhibits A, B, C, and D) The

6

plaintiff only took two exams that included Torts on Friday, May 9, 2002 in the evening

schedule, and Property on Monday, May 12, 2003 in the day schedule. There were no

rescheduling of final exams or a written request made by the plaintiff to reschedule final

exams.

On May 1, 2003 and May 7, 2003, Dr. Dorothy Brown gave the plaintiff an

evaluation and proved that the plaintiff has "special needs;" however, the report was "not

completed." (See: Exhibit A) Despite these accommodations, the plaintiff's scores

worsened because of the following: (1) defendant's failure to acknowledge the plaintiff's

disability and academic concerns in her 1st appeal, (2) defendant's failure to provide a

probation status for the plaintiff to review the "complete" evaluation and report, (3)

defendant's failure to acknowledge how a wrongful allegation of "stalking" made by a

faculty as a retaliatory act because of an unapproved class transfer against the plaintiff,

and (4) the defendant's failure to a duty to the plaintiff because she is a "qualified

handicapped" person protected within the meaning of the Americans with Disabilities

Act 1990 and Rehabilitation Act of 1973. Because of the defendant's failure to

acknowledge the plaintiff's as a "qualified handicapped" person as a matter of law, and

failed to foresee how a wrongful allegation of "stalking" by faculty would interfere with

any reasonable and prudent person's ability to focus inside and outside of a classroom

setting, the defendant grossly discriminated against the plaintiff under ADA laws.

Because the plaintiff is not only a "qualified handicapped" person as matter of law, she is

also public figure in the school community, nationwide, and published author and poet.

At the end of semester, the plaintiff was dismissed from SNESL before Dr. Brown's

7

report was completed.

After seeking general counsel and support from various agencies, counselors, individuals, and organizations, the plaintiff finally consulted with Dr. Brown on April 21, 2004 to review the complete report, and asked her to make a written statement based on her overall evaluation to her findings on her initial report on May 1, 2003 and May 7, 2003. (See: Exhibit A) According to these material facts, regardless of plaintiff's past accomplishments, the plaintiff is protected under ADA laws because she is handicapped as a matter of law, and thereby, discriminated against by the defendants because of an academic dismissal based on her academic record and circumstances of case.

## ARGUMENT

## I.    THE PLAINTIFF WAS DISCRIMINATED AGAINST BY THE DEFENDANT ON THE BASIS OF A HANDICAP.

The defendant discriminated against the plaintiff because of a handicap as a matter of law based on her academic record (e. g. a learning disability) under the American with Disabilities Act of 1990, 42 U. S. C. 12182, and for circumstances of case (e. g. a wrongful allegation of stalking) that inferred and worsened the plaintiff's handicap under the Rehabilitation Act of 1973, 504 (a). These statutes prohibit any discrimination against individuals with disabilities. According to Dr. Brown's initial evaluation, the plaintiff has "special needs in the areas of a weakness in visual speed, visual perceptual organization and working memory," and "attention deficit disorder." Also, her report states that "a complete evaluation and report have not been completed." (See: Exhibit A) Which means, according to Brown's affidavit, she "had not yet prepared a formal report based on the May 1 and May 7 testing." (See: Brown Aff.) This

8

testing was completed on May 29, 2003, and a review of her final conclusion on that test was given to the plaintiff on April 21, 2004. A final recommendation for the plaintiff's special needs was made on April 22, 2004 for a "reader" for exams. (See: Exhibit A) However, the plaintiff's dismissal notice was sent on May 12, 2003, and subsequently, she was denied readmissions with two appeals to full faculty while the defendant's were aware of the her academic struggles inside and outside of the classroom settings.

In fact, during the plaintiff's appeal process on May 12, 2003 through May 16, 2003, the defendant did not acknowledge the question of facts or material facts of the learning disability in Dr. Brown's the initial report, or acknowledge the materials facts in the circumstances of case that worsened the plaintiff's handicap. Despite these facts, the defendant grossly discriminated against the plaintiff by dismissing her based on academic grounds (e. g. low test scores), and circumstances of case with gross assumptions that the plaintiff is incapable of passing the two core courses, Property and Torts, and the State Bar Exam when the defendant's does not have adequate resources for person's with a disability since the defendant's does not have an ADA Resource Center or Disability Resource Specialist that protect "handicapped" students like the plaintiff as a matter of law, and because the defendant's failed to wait to further review the "initial" evaluation and report by Dr. Brown. (See: Exhibits A and D) Thereby, the defendant has clearly discriminated against the plaintiff, who is a "qualified handicapped" person as a matter of law under the Americans with Disabilities Act of 1990, 42 U. S. C. 12182, and under the Rehabilitation Act of 1973, 504 (a).

9

**A.    The Plaintiff Is Handicapped Within the Meaning of ADA.**

Under the Americans with Disabilities Act of 1990 (ADA), "disability" means "a physical or mental impairment that substantially limits one or more major life activities." … 42 U. S. C. Section 12101(2)A. "Major life activity" means "functions such as breathing, hearing, seeing, speaking, walking, and learning." 28 C. F. R. Section 36.104(2). Reading under ADA is a major life activity. However, to be a major life activity under ADA, an activity need not be essential to survival, but rather must be of central importance to most people's daily lives. Americans with Disabilities Act of 1990, Section 2 et seq., 42 U. S. C. A., Section 12101 et Seq. "Plaintiffs need not supply comparative or medical evidence if they provide other adequate evidence." Head v. Glacier Northwest, Inc., 413 F. 3d. 1053 (2005) "At least one Court of Appeals has held that reading is a major life activity." Barlett v. N. Y. State Board of Law Examiners, 226 F. 3d 69, 80 (2d Cir. 2000) Also, "the term 'disability' means with respect to an individual - - (a) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment." 42 U. S. C., Section 12102 (2). The plaintiff in this case has not only demonstrated evidence with a comparative or medical evaluation and report, but she has provided the defendant in the initial statement before admissions evidence of low test scores on the Law School Admissions Test (LSAT) with a score of 128. (See: Exhibit D)

Based on Dr. Dorothy Brown, a licensed psychologist who tested the plaintiff, the plaintiff has "attention deficit disorder and weakness of visual speed, visual perceptual

10

organization, and working memory." (See: Exhibit A)  In addition, Dr. Brown suggests

after further review of the initial report dated in May 2003 that she "would support Lisa

taking exams by having them read to her and by giving her extra time to complete tests."

(See: Exhibit A) While the plaintiff shows good ability in the area of abstract reasoning,

the plaintiff has "difficulty encoding visual information" because she has a visual

disability. (See: Exhibit A)   Despite the plaintiff's various accomplishments in other

aspects of her life, the defendant's discriminatory acts against the plaintiff because she

has a "visual encoding disorder" that substantially limits the plaintiff's major life activity

in terms of her legal educational pursuits to obtain a law degree. According to the

defendant's, the plaintiff's inability to perform well on timed standardized test is not, as a

matter of law, a disability that substantially limits a major life activity. However, reading

under the ADA is in fact a major life activity. Head v. Glacier Northwest, Inc., 413 F. 3d

1053 C. A. 9 (2005) Thereby, the plaintiff is handicapped within the meaning of ADA,

and the defendant's grossly discriminated against the plaintiff because she has a visual

disability that causes her "difficulty" in "encoding visual information."

**B.    The Plaintiff Is A Qualified Handicapped Person.**

      For a claim under ADA or 504, the plaintiff must be a "qualified handicapped

person." This is defined as:

> [w]ith respect to postsecondary and vocational educational
>
> services, [as] a handicapped person who meets the academic
>
> and technical standards requisite to admissions or participation
>
> in the recipient's education program or activity. 34 C. F. R.

Section 104.3(1)(3).

It is undisputed that the despite being granted some accommodations by the defendant, the plaintiff was discriminated against because of her handicap as a matter of law. While the plaintiff failed two substantive core courses, and had a cumulative grade point average of 61.9 (D), which is a passing score, the defendant admitted the plaintiff based on her merit of school community accomplishments, nationwide, and were fully aware of the past academic low test score concerns (e. g. a learning disability) prior to admissions. (See: Exhibit B) In addition, the defendant's knowingly admitted the plaintiff with the LSAT score of 128 while accepting these low scores from other students as public policy as an average school admissions score.  (See: Exhibits A and B)  Further, the defendant's discriminated against the plaintiff because they should have known based on the following material of facts: (1) on the plaintiff's LSAT scores, (2) her initial letter before actual admissions, and (3) the initial evaluation and report by Dr. Dorothy Brown that the plaintiff could not be exempt from failure of these two core courses without the adequate support of an ADA Resource Center or Disability Resource Aid or Coordinator to support the plaintiff's disability claims in a more timely manner. (See: Exhibits A, B, and D)  Also, the defendant discriminated against the plaintiff because they should have known that a direct interference and wrongful allegation of stalking by faculty made against the plaintiff would grossly worsen and interfere with the plaintiff's in class study preparations and final exams, and out of class school activity.  (See: Exhibit C) The statute stated that

12

> there is cause of action under ADA and the Rehabilitation
>
> Act for hostile learning environment when harassment based
>
> on student's disability has purpose or effect of unreasonably
>
> interfering with student's performance, or of creating
>
> intimidating, hostile or offensive environment. 29 U. S. C. A.
>
> Section 794(a)(b)(A), 42 U. S. C. A. Section(s) 12181(7)(J),
>
> 12182.

See Guckenberger v. Boston University, 957 F. Supp. 306 (D. Mass 1997)  Thereby, the defendant dismissed the plaintiff based on discriminatory practices under the ADA laws of 1990 and the Rehabilitation Act of 1973 because the defendant's dismissed her based on academic record, including lower LSAT scores instead of past accomplishments, and circumstances of case rather than interference by faculty.

## C.    The Plaintiff's Accommodations Are Not Adequate Testing Measurements.

It is undisputed that the defendant granted some accommodations for the plaintiff. However, the plaintiff argues that if the defendant's had of carefully evaluated or taken seriously the initial report by Dr. Dorothy Brown stating that "a complete report have not been completed," and acknowledging the wrongful and intentional interference by faculty that worsened the plaintiff's disability, there would not be a discriminatory violation under the Americans with Disabilities Act of 1990, and the Rehabilitation Act of 1973. Because the defendant's violated these laws, the plaintiff was grossly discriminated against as a matter of law because she is a "qualified handicapped person."  The ADA

13

defines discrimination to include "a failure to make reasonable medications in policies, practices or procedures when such modifications are necessary" to accommodate individuals with disabilities. 42 U. S. C. Section 12182(b)(2)(A)(ii). Because the defendant's made some accommodations for the plaintiff, the plaintiff argues that the accommodations were not reasonable or an adequate assessment for the plaintiff's failures in two core courses, Property and Torts because the defendant dismissed the plaintiff before the "complete report have not been completed" by the evaluator, Dr. Dorothy Brown. (See: Exhibit A) While these regulations promulgated under this section require educational institution's "to make such modifications to its academic requirements as are necessary to insure that such requirements do not have the effect of discriminating, on the basis of handicap, against a qualified handicapped applicant or student." 34 C. F. R. Section 104.44(a)

If, in fact, the duty, however, is not only triggered when a person makes a specific request for an accommodation, but this request must be 'sufficiently direct and specific,' giving notice that she needs a 'special accommodation," … At the least the request must explain how the accommodation requested is linked to some disability," the defendants grossly violated this rule under ADA laws of 1990 because they did not take seriously the plaintiff's initial report dated on May 7, 2003 by Dr. Dorothy Brown stated that the plaintiff has "special needs" in the above testing areas, and "a complete report have not been completed." (See: Exhibit A) Reed v. LaPage Bakeries, Inc., 244 F. 3d 254, 261 (1st Cir. 2001) Further, if in fact the duty is triggered when a person makes a sufficient direct and specific "special accommodation," the defendant's violated this duty because how

14

could the defendant's, none who are qualified or licensed psychologist, have known about further assessments for the plaintiff's disability when the defendant's do not have an ADA Resource Center or Disability Center that would assist them with any "qualified handicapped" person as a matter of law such as the plaintiff with any assessments or evaluations. (See: Exhibit D)

As noted, it is undisputed that the plaintiff made requests for transfers from her Legal Writing and Torts classes in the fall of 2002. However, it is disputed that based on the material of facts that these transfers were based on a learning disability, and a class interference that worsened the plaintiff's learning disability as a matter of law under the ADA laws of 1990, and the Rehabilitation Act of 1973. (See: Exhibits B and C) It is an unreasonable assumption for the defendants to argue that the plaintiff's disability was diagnosed in May 2003, when the defendant's should have known based on the following: (1) plaintiff's low LSAT scores, (2) initial statement before admissions, and (3) the admission by the Dean that the school does not have an ADA Resource Center or Center for Disabilities that the plaintiff's learning disability did not already exists, and her evaluation could have been done in a more timely manner, if the defendants had adequate resources such as an ADA Resource Center for "qualified handicapped" persons under the law such as the plaintiff. (See: Exhibits A, B, C, and D) In addition, the defendant's should have known that a wrongful allegation of stalking by faculty because of an unapproved writing class transfer would grossly interfere with the plaintiff's in class and out of class, personal and professional life activities, as a "qualified handicapped" person as a matter of law under ADA of 1990, and the Rehabilitation Act

15

of 1973. (See: Exhibits A, B, C, and D) While the defendant denies these allegations to be true, the plaintiff's disability was worsened because of the intimation and interference made by faculty.

Despite some accommodations, the plaintiff's mark went down because the defendant's assumed based on the plaintiff's low scores that she is not "qualified as a handicapped" person as a matter of law. While the defendant granted the plaintiff some accommodations, these accommodations were not adequate because the defendant did not wait for the "complete report to be completed" by Dr. Dorothy Brown. (See: Exhibit A) Further, while the defendant argues that they "tried to help her [the plaintiff] overcome these problems  by giving her every accommodation she requested, and she still failed," the defendant is liable because they failed to wait for the "complete report and evaluation to be completed" by Dr. Brown. Also, the defendant grossly discriminated against the plaintiff because of an assumption that the plaintiff was an automatic failure because of her acknowledgment of learning problems before admissions into the law program, during admissions into the law program, and before final exams at the end of the year.

In fact, if the defendant had an ADA Resource Center or Disability Center for students with disabilities as a matter of law, the defendant may be in a better position to support "qualified handicapped" persons as a matter of law such as the plaintiff. It is a gross assumption and not acceptable that any institution in higher education not to take seriously persons protected under the Americans with Disabilities Act of 1990, and the Rehabilitation Act of 1973 when, in fact, the persons demonstrate evidence of a learning

16

disability to administration and faculty, and persons such as the plaintiff "qualified" under these laws are neither taken seriously, nor supported in their academic pursuits.

## II.    THE DEFENDANT IS LIABLE FOR SCHOOL INTERFERENCE AND EMOTIONAL DISTRESS UNDER THE REHABILITATION ACT OF 1973, 504 (A)

The defendant is liable for a wrongful allegation of stalking as a retaliatory act by faculty, Irene M. Scharf that grossly interfered and worsened the plaintiff's learning disability as a matter of law under the Americans with Disabilities Act of 1990, and the Rehabilitation Act of 1973, Section 12182, Part 36.206. The claim is actionable for two reasons: first, Irene M. Scharf wrongfully accused the plaintiff of stalking her, and second, even if the allegation is accepted as true, Irene Scharf made this allegation directly after her disapproval of the plaintiff's writing class transfer in the beginning of the second semester 2003. If, in fact, according to the defendant's argument, the allegation of stalking was not intentional, the wrongful allegation worsened the plaintiff's learning disability because the wrongful allegation not only grossly interfered with the plaintiff's in class focus, created anxieties, mental anguish, a weakness of memory, it harmed the plaintiff's personal life activities in the class room setting and professional life due to the plaintiff's public figure status, nationwide, as a published author and poet. (See: David's Aff.) Under the law, the defendant is liable for causing in class interference to the plaintiff as an act of retaliation because the plaintiff is a "qualified handicapped" person as a matter of law. The statute states the following:

**Section 12182, Part 36.206 Retaliation or coercion** provides that:

(a) No private or public entity shall discriminate against any individual because

17

that individual has opposed any act or practice made unlawful by the part, or

(b) because that individual has made a charge, testified, assisted, or participated in any matter of in an investigation, proceeding, or hearing under the Act or this part.

(c) No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, on the account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act of this part.

(d) Illustrations of conduct prohibited by this section include, but are not limited to:

(1) Coercing an individual to deny or limit the benefits, services, or advantages which he or she is entitled under the Act or this part;

(2) Threatening, intimidating, or interfering with an individual with a disability who is seeking to obtain or use the goods, services, facilities, privileges, advantages, or accommodations of public accommodations.

(3) Intimidating or threatening any person because that person is assisting or encouraging an individual or group entitled to claim the rights granted or protected by the Act or this part to exercise those right; or

(4) Retaliation against any person because that person has participated in any investigation or action to enforce the Act or this part.

18

A.    **Professor Irene Scharf Did Accuse the Plaintiff of Stalking**

While it is undisputed that the plaintiff did not hear the defendant, Irene Scharf,

use the term stalking "per se," Irene Scharf did accuse the plaintiff of stalking her.

According to Dr. Christine Frizzell, a Counselor at the University of Massachusetts,

Dartmouth campus, she states that

> "Lisa was referred by Dean Ward of SNSL for help with academics and a
>
> disagreement with a professor. According to the dean, Lisa's professor had
>
> complained that she felt she was being 'stalked,' apparently meaning receiving
>
> excessive emails and requests for assistance from Lisa." Feb. 3, 2003
>
> (See: Exhibit C)

In addition, it is undisputed that Dr. Christine Frizzell and Robert Ward, the Dean, made

the plaintiff aware of these allegations of stalking. However, it is disputed that the

plaintiff's only contact, including emails, were based on approved meetings by Irene

Scharf discussing in class Torts and tutorial problems, and the plaintiff's request for

professional and writing assistance of a prospective law review article.

In fact, whether or not the statement was believed to be true or not, the wrongful

allegation of stalking would grossly hinder or interfere with any reasonable and prudent

person's ability to focus in school class room or outside of the school, especially if the

person is a "qualified handicapped" person as a matter of law, or public figure or

published author such as the plaintiff in this case under the ADA laws of 1990, and the

Rehabilitation Act of 1973.

On February 3, 2003, the dean followed up with a letter to the plaintiff that stated

19

the following:

> "As of Monday, February 3, 2003, I am allowing your request
> to transfer from Professor Scharf's Torts class to Professor
> Cleary's Torts class. I will also ask Professor Rudko to be your
> faculty advisor." Feb. 3, 2003 (See: Exhibit C)

Robert Ward, the Dean, continued by instructing the plaintiff to do the following:

> "You are not to discuss the matters involving yourself with
> Professor Scharf with anyone else. You should have no further
> contact with Professor Scharf. Lastly, you should continue to
> meet with Christine Frizzell at UMD." Feb. 3, 2003.
>
> (See: Exhibit C)

If, in fact, the defendant's, according to multiple affidavits by Hillinger, Scharf, and Ward, Irene Scharf did not use the word stalking, it would have been nearly impossible and utterly unreasonable for the plaintiff to assume that these events ever happened. Because Irene Scharf did make this wrongful and malicious allegation of stalking as a retaliatory action against the plaintiff based on an unapproved writing class transfer, the defendant is liable because Irene Scharf should have known that this wrongful allegation of stalking would potentially harm or grossly interfere with the plaintiff's in class and out of class activity and life because the plaintiff is a "qualified handicapped" person as a matter of law under ADA of 1990, and Rehabilitation Act 1973.

Accordingly, after the plaintiff became aware of this wrongful allegation of stalking that grossly interfered with her learning disability because she is a "qualified

20

handicapped" person as a matter of law, the defendants quickly on the following date made this statement via email to the plaintiff:

> "After our conversation, I spoke with Associate Dean Michael
> Hillinger and Professor Irene Scharf and want you to know
> That Professor Scharf never used the term 'stalking' when
> Discussing the situation." (Exhibit C)

Based on these materials of facts, Irene Scharf, a former Legal Advisor, Torts Instructor, and Torts tutor of the plaintiff, did wrongful accuse the plaintiff of stalking her because of an unapproved writing class transfer. Further, the sequences of events caused not only mental anguish and emotional harm to the plaintiff, but these events grossly worsened her learning disability as a matter of law because it grossly intimidated and interfered with the plaintiff's ability to focus and retain memory for course studies at the school. The defendant, Irene Scharf, did wrongfully accuse the plaintiff of stalking her as a retaliatory act because of an unapproved writing class transfer, and the defendant is liable for intimidation and interference that worsened the plaintiff's learning disability because she is a "qualified handicapped" person as a matter of law.

**B.      Under the Circumstances of This Case an Accusation of Stalking Does Constitute Intimidation, Interference, and Retaliation under ADA Retaliation Claim, Section 12181, Part 36.206**

Because Irene Scharf  used the word "stalking" the request is the same: it is actionable under the **ADA Retaliation Claim, Section 12182, Part 36.206**. The statute states the following:

21

(a) No private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by the part, or

(b) because that individual has made a charge, testified, assisted, or participated in any matter of in an investigation, proceeding, or hearing under the Act or this part.

While the defendants persistently argue that Irene Scharf did not intentionally inflict emotional distress onto the plaintiff, as a retaliatory act because of an unapproved writing class transfer, the defendant's behavior meets the four elements within the Torts laws of Intentional Infliction of Emotional Distress because of her wrongful allegations of stalking against the plaintiff. The four elements of <u>Intentional Infliction of Emotional Distress</u> are: (1) that the actor intended to inflict emotional distress or that he knew or should have know that emotional distress was the likely result of his conduct . . .; (2) that the conduct was extreme and outrageous," was beyond all possible bounds of decency," and was "utterly intolerable in a civilized community," (3) that the actions of the defendant's were the cause of the plaintiff's distress, and (4) that the emotional distress sustained by the plaintiff was "severe" and of a nature "that no reasonable man could expect to endure." <u>Agis v. Howard Johnson Co.,</u> 371 Mass. 140, 144-45, 355 N. E. 2d. 315, 318 (1976) The defendant's should have known that a reasonable and prudent person, regardless of disability or not would be severely harmed or disability worsened because of in class study interference and wrongful allegation of stalking, especially if the person is a "qualified handicapped" person as a matter of law.

22

First, Irene Scharf knew or should have known that the plaintiff had a learning disability or was otherwise a "qualified handicapped" person under ADA laws of 1990, and the Rehabilitation Act of 1973 because she tutored the plaintiff with Torts problems, and was the first person at the school to acknowledge the plaintiff's reading disorder in these sessions. Second, Irene Scharf's conduct was outrageous and "utterly intolerable" because she knew or should have known that this wrongful allegation of stalking would cause severe in class and out of class learning interference because the plaintiff was already in academic jeopardy during the time of the wrongful allegation. Third, Irene Scharf's actions caused intimidation, anxieties, fear, and a weakness of memory that grossly impacted the plaintiff's course studies because Scharf attempted to lower the plaintiff's dignity with this wrongful and malicious allegation based on an unapproved writing class transfer on November 16, 2002. Finally, Irene Scharf's wrongful allegation of stalking caused "severe" emotional distress onto the plaintiff because the plaintiff is not only a "qualified handicapped" person as a matter of law, but the plaintiff is also a public figure, nationwide, and a published author and poet. (See: Exhibit David's Aff.) The defendant's argue that some courts may have stressed that liability cannot be based on "mere, threats or annoyances." However, under the ADA laws of 1990, and the Rehabilitation Act of 1973, the defendants have grossly discriminated against the plaintiff because of a wrongful allegation of stalking as a retaliatory act by faculty onto the plaintiff that worsened her ability to focus, and retain memory, and her ability to succeed in this peculiar law program.

Under the **ADA Retaliation Claim**, **Section 12182, Part 36.206**, the defendant's

23

grossly discriminated against the plaintiff with a wrongful allegation of stalking that worsened the plaintiff's disability as a "qualified handicapped" person as a matter of law. The statute states the following:

> (3) Intimidating or threatening any person because that person is assisting or encouraging an individual or group entitled to claim the rights granted or protected by the Act or this part to exercise those right; or

> (4) Retaliation against any person because that person has participated in any investigation or action to enforce the Act or this part.

Accordingly, the defendants arguably deny that Irene Scharf did not negligently inflict emotional distress onto the plaintiff with her wrongful allegation of stalking as a retaliatory act based on an unapproved writing class transfer. However, the defendant's wrongful actions meet the five elements of Negligent Infliction of Emotional Distress. The five elements of <u>Negligent Infliction of Emotional Distress</u> are: (1) Negligence, (2) Emotional Distress, (3) Causation, (4) Physical Harm, and (5) A reasonable person would have suffered emotional distress under the same circumstances of the case.

First, the defendant, Scharf, was negligent when she wrongfully accused the plaintiff of stalking because there was no evidence or proof. Second, once the plaintiff became aware of Scharf's wrongful allegation of stalking and requested for a class transfer because on the allegation due to class intimidation and interference, the defendant's considered the allegation a "misunderstanding." (See: Exhibit C) Third, Scharf alleged the plaintiff of stalking in the beginning of the second semester because of

24

a disagreement and disapproval of the plaintiff's writing class transfer from the first

semester 2002. Fourth, the defendant's actions grossly interfered with the plaintiff's

learning disability because it caused a weakness of memory, lack of focus, more fear,

intimidation, anxieties, and in class and out of class study interference because the

plaintiff is a "qualified handicapped" person as a matter of law. (See: Exhibit C)  Finally,

Scharf's wrongful allegation of stalking onto the plaintiff would cause any reasonable or

prudent person emotional distress, and class interference and intimidation, regardless if

the person is a "qualified handicapped" person as matter of law or a public figure,

nationwide, or published author and poet, such as the plaintiff under the ADA laws of

1990, and the Rehabilitation Act of 1973. The Supreme Judicial Court has noted that

> [a] successful negligent infliction of emotional distress claim . . . must do
>
> more than allege "mere upset, dismay, humiliation, grief and anger."
>
> rather, plaintiff must corroborate the mental distress claims with enough
>
> objective evidence of harm to convince a judge that these claims present
>
> a sufficient likelihood of genuineness to go to trial."

Sullivan v. Boston Gas. Co., 414 Mass. 129, 137-38, 605 N. E. 2d 805, 809-10 (1993). In

this case, the Court must use its own discretion, keeping in mind the goal is to determine

if there is enough evidence sufficiently corroborates a mental distress claim.  Further,

under the Rehabilitation Act of 1973, the defendant may be liable if the plaintiff can

corroborate evidence that if the defendant had allowed reasonable accommodations

without the intimidation and interference by faculty that the plaintiff as a "qualified

25

handicapped" person with a disability as a matter of law. <u>Constantine v. Rectors and Vistors of George Mason University</u>, 411 F. 3d 474, 16 A. D. Cases 1445, 30 NDLR P157, 4th Cir. (Va.), June 13, 2005. In this case, however, the Courts specifically identified public education as one of a number of "public services, programs, and activities" in which there was a documented pattern of unequal treatment." <u>124 S. Ct. at 1989</u>. Because the defendant, Irene Scharf, wrongful alleged the plaintiff of stalking her, the defendants grossly discriminated against the plaintiff because of the nature of circumstances that threatened, intimidated, interfered, and worsened the plaintiff's learning disability. Thereby, the defendant grossly discriminated against the plaintiff with an academic dismissal because the plaintiff is a "qualified handicapped person" as a matter of law under the ADA laws of 1990, and the Rehabilitation Act of 1973.

## CONCLUSION

For the above reasons, the plaintiff requests that its Opposition to the Motion for Summary Judgment be allowed.

Lisa J. Gillard, PRO SE

Lisa J. Gillard
P.O. Box 5213
Chicago, IL 60680-5213
Tel.: 1-773-425-0307

Dated: August 12, 2005

26